# EXHIBIT A

1 | THE LAW OFFICES OF KENNETH TOWNSEND
2 | Kenneth Townsend, Esq. (SBN 183591)
1001 Gayley Avenue Suite 105 #24514
3 | Los Angeles, CA 90024
Telephone: (310) 997-0386
4 | Fax: (888) 895-2202
townsend1994@lawnet.ucla.edu

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/15/2024 2:08 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Covarrubias, Deputy Clerk

5
6 | LAW OFFICE OF DANIEL M. O'LEARY
Daniel O'Leary, Esq. (SBN 175128)
7 | 2300 Westwood Blvd #105
Los Angeles, CA 90064
8 | Telephone: (310) 481-2020
Fax: (310) 481-0049

9
*Attorney for Plaintiff and the Putative Class*

10

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

AMANDA JOLICOEUR-LOUIS, an individual, and on behalf of all others similarly situated,

     Plaintiffs,

  vs.

CONSERVICE, LLC, a Utah limited liability company,

     Defendant.

Case No.: 24STCV06518

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Conservice, LLC ("Conservice") is a Utah-based utility billing and management company that assists third-party landlords in collecting utility charges (e.g., sewage, water, trash removal, etc.) via their website, app ("MyCUC"), and ebills. Conservice contracts directly with landlords to provide billing services for them. Conservice then bills tenants every month and also sends collection and dunning letters to tenants. As stated on their website, Conservice "ensures that residents are billed promptly and accurately for their utility expenses."[1] Conservice earns exorbitant fees, as high as $5.00, designated as a "service fee" or "rent collection fee, for, as Conservice admits: "help[ing]with the costs of operating facilities such as our Customer Service center and website so you can make an instant, one-time payment." Across California, the largest rental market in the US, with an estimated 14 million renters,[2] tenants are directed to this website by their landlords, or solicited directly through Conservice, to pay their utility bill online. This was especially true during the pandemic when social distancing was being enforced. Consequently, during the height of covid, when many residents faced insurmountable difficulties paying their rent and eviction moratoriums were in place, Conservice was charging tenants illegal pay-to-pay fees just to pay their utility bills online. These fees were not authorized by law and in fact, Civil Code § 1788.14 expressly prohibits "[c]ollecting…from the debtor the whole or any part of the debt collector's fee or charge for services rendered."

Further, Conservice is **not** a licensed debt collector per Financial Code section 100001 of the Debt Collection Licensing Act, which prohibits unlicensed debt collection within the state. As such, Conservice's activity is illegal under Financial Code § 100001 et seq., the Rosenthal Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788, *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

Plaintiff Amanda Jolicoeur-Louis ("Louis") is a tenant in Randolph Lofts, an apartment building that contracts with Conservice. Plaintiff was subjected to the aforementioned fees. As such, Plaintiff brings this Class Action Complaint against Defendant Conservice to obtain redress for all California

---

[1] Conservice website: https://www.conservice.com/solutions/expense-recovery/ (last visited February 6, 2024).

[2] NY Times Conor Dougherty, "Does Your Representative Also Pay Rent?" July 23, 2023. *See also*, US Census Data https://data.census.gov/table/ACSST1Y2022.S2504?q=Owner/Renter+(Householder)+Characteristics&t=Owner/Renter+(Tenure)&g=040XX00US06 (last visited Nov. 2, 2023).

tenants who have used the Conservice app or website (or been ebilled) and who have been illegally charged Defendant's pay-to-pay fees. Plaintiff alleges as follows as to herself, upon personal knowledge and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys:

## PARTIES

1.      Plaintiff Louis is a natural person and citizen of the State of California and is a resident at the Randolph Lofts located at 215 W. 6th Street # MH0806, Los Angeles, CA 90014 in the County of Los Angeles at all relevant times herein.

2.      Defendant Conservice is a Utah limited liability company with its headquarters and principal place of business at 750 South Gate Drive, River Heights, Utah 84341. Conservice also has an office in California at 4 Executive Cir Ste 250 Irvine, CA 92614.

## JURISDICTION

3.      This Court has personal jurisdiction over Defendant because it maintains offices in California and is registered to do business therein. A substantial part of the events and conduct giving rise to Plaintiff's claims arose in California, and Defendant purposefully directed its activity at California by maintaining a commercial website and app that is open to commerce with California residents.

4.      Venue is proper in this county because Plaintiff resides herein, and the offenses pursuant to the Rosenthal Act, Debt Collection Licensing Act and UCL occurred in Los Angeles County.

## FACTUAL ALLEGATIONS

5.      On or about September 29, 2023, Plaintiff Louis entered into a lease agreement to live at the Randolph Lofts, located at 215 W. 6th Street, Los Angeles, Apartment Number MH0806. She entered a fixed-term lease that extends from September 2023 until September 2024 ("Lease Agreement"). Further, the lease was obtained on credit. That is, Louis's lease was only approved after her consumer credit report, as that term is defined at C.C. § 1788.2(j), was obtained and reviewed by Randolph Lofts. Attached hereto as **Exhibit A** is true and correct copy of Plaintiff Louis's Lease Agreement, including the Utility and Services Addendum.

6.      At Paragraph 6, the Lease Agreement directs Plaintiff to pay her rent either on-site or through "WIPS," which is Yardi System, Inc.'s online payment system that is separate from and has

nothing to do with Defendant. However, pursuant to Paragraph 1 of the **Utility and Services Addendum** ("Utilities Addendum"), Plaintiff was directed to pay her utilities –water, sewer, trash, electricity, and pest control – through Conservice. The Utilities Addendum also specified that Conservice might charge an administrative fee of up to $6.00 per month, even though this is illegal per Civil Code § 1788.14(b). Of note, however, the Utilities Addendum states in Paragraph 11 that "This Addendum is designed for use in multiple jurisdictions, and no...**charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful**."

7.    Consistent with the typical arrangement for utilities, each monthly bill sent to Plaintiff by Conservice was for past service (e.g., June bill was for electricity generated in May). Or, as Conservice states in its FAQ section of its website, "Utilities are most commonly billed in arrears, which means you will see charges for previous months on your Conservice bill. This is because utilities can't be billed until they have been used..." Given this structure, the Conservice arrangement embodied a transaction in which services were acquired on credit primarily for personal, family, or household purposes—*i.e.*, a consumer credit transaction per Civil Code section 1788.2(e).

8.    Plaintiff received emails each month from Conservice specifying the amount of her utility charges and assessing an illegal convenience fee of approximately $3.99. Additionally, Plaintiff frequently used the Conservice website and ebills to review and assess her utility bills during her tenancy. Each time that Plaintiff made payments of her utilities and associated charges, Conservice imposed, and Plaintiff paid, an additional pay-to-pay fee in violation of Civil Code section 1788.14(b).

9.    For example, on October 28, 2023, Louis was billed $18.65 for her utilities, including electricity, pest control, trash, and water, for the period from September 30 through October 1, 2023 (Plaintiff's lease had just started and these were pro-rated charges). Included in this bill was a service fee of $3.99, deceptively designated as a "Rent Service Fee." Plaintiff paid this bill, including the service fee, on November 14, 2023. However, Plaintiff paid her rent through the Randolph Lofts/RentCafe website pursuant to Paragraph 6 of her lease. (Randolph Lofts used Yardi System's RentCafe.com website to process rent payments online, *and Yardi charges its own convenience fees to collect rent via its online portal*.) Conservice's service fee, on the other hand, has nothing to do with rent collection. The fee is misleadingly given this title to disguise the fact that it is an illegal pay-to-pay fee and to induce Plaintiff

to pay it out of fear of eviction. As specified in the "Help" section of Conservice's website, "The convenience fee helps with the costs of operating facilities such as our …website so you can make an instant, one-time payment."

10.     As another example, on November 30, 2023, Louis was billed $256.50 for her utilities, including electricity, pest control, trash, and water for the period from October 1 through November 1, 2023. Included in this bill was a service fee of $3.99, deceptively designated as a "Rent Service Fee." Plaintiff paid this bill, including the service fee, on December 5, 2023. However, Plaintiff paid her rent through the Randolph Lofts/RentCafe website pursuant to Paragraph 6 of her lease. (Randolph Lofts used Yardi System's RentCafe.com website to process rent payments online, *and Yardi charges its own convenience fees to collect rent via its online portal*.) Conservice's service fee, on the other hand, has nothing to do with rent collection. The fee is misleadingly given this title to disguise the fact that it is an illegal pay-to-pay fee and to induce Plaintiff to pay it out of fear of eviction. As specified in the "Help" section of Conservice's website, "The convenience fee helps with the costs of operating facilities such as our …website so you can make an instant, one-time payment."

***Defendant Was Collecting Debt Without a License***

11.     The Debt Collection Licensing Act ("DCLA") prohibits unlicensed debt collection within California per Fin C §100001. The DCLA adopts the Rosenthal Fair Debt Collection Practices Act definition of the term "debt collection," which specifically pertains to money or property due or owing (or alleged to be due or owing) "by reason of a consumer credit transaction." As shown in the above paragraphs, Conservice qualifies as a debt collector under California law.

12.     To become licensed, debt collectors must sign an application under penalty of perjury, pay a fee, and submit to a criminal background check. Fin C §§100007, 100008. Covered entities are required to be licensed by January 1, 2023 - debt collectors that have submitted an application prior to the effective date may continue to operate pending approval. However, Conservice does **not** have a pending application, as shown on the website for California's Department of Financial Protection and Innovation ("DFPI"), which shows the status of pending applications.

///

///

13.    Conservice has obtained a license to collect debt in the following states, proving that Conservice is aware it requires such licensure: Arizona, Idaho, Maryland, New Mexico, North Dakota, Oregon and Rhode Island. But Conservice has not obtained a license to collect debts in California.

14.    Pursuant to the DCLA, relief due to a violation may include refunds, restitution, disgorgement, and damages. Fin C §100005(a)(2).

15.    Defendant's failure to obtain a license to collect debts while collecting debts statewide constitutes an unfair and deceptive act and practice under Business and Professions Code §§ 17200 and 17500.  Plaintiff was damaged due to Conservice's circumvention of the licensing requirements when she was assessed an improper monthly service fee.

16.    Conservice's acting as a debt collector in California, when it was not licensed as a collection agency, damaged Plaintiff and other Class Members. For example, Plaintiff and other members of the Class were forced to pay "Service Fees," which were illegal per Civil Code §1788.14(b), as a direct and proximate result of Conservice's collection activity, even though that activity was against the law and no fees should have been assessed to Plaintiff and other Class members for Conservice's illegal business practices. (Below is a sample Conservice California bill screenshot from a prospective Class Member.)



| SERVICE TYPE | SERVICE PERIOD | CHARGES |
|---|---|---|
| Water Heating | 03/01/2023 - 03/31/2023 | $22.96 |
| Sewer | 03/01/2023 - 03/31/2023 | $58.38 |
| Trash | 03/01/2023 - 03/31/2023 | $47.09 |
| Water | 03/01/2023 - 03/31/2023 | $24.24 |
| Service Fee | Conservice is a service provider contracted to prepare monthly statements and provide conservation resources. | $5.50 |
| Current Charges due 05/01/2023 | | $158.17 |
| Total Current Charges | | $158.17 |

17.    The DCLA's prohibition against persons doing business as a collection agency without a license is designed to protect the interests of consumers like Plaintiff and the Class Members who are subjected to collection activity by debt collectors and to prohibit these agencies from using abusive and unfair debt collection practices against them. In its transactions with Plaintiff and the Class Members, Conservice uniformly and systematically failed to comply with, and violated, the requirements of DCLA, ///

1  and by extension to the Business and Professions Code §§ 17200, 17500 and caused damage to the

2  Plaintiff and Class members via the collection of illegal fees.

3  <u>**STATUTE OF LIMITATIONS – CONTINUING VIOLATION**</u>

4       18.    By its very nature (e.g., monthly billing), Conservice's collection of illegal pay-to-pay

5  fees, as well as ongoing debt collection without being licensed, constitutes a continuing violation. As

6  such, Conservice's entire course of conduct beyond the one-year statute of limitations imposed by the

7  Rosenthal Act is at issue. Specifically, by collecting illegal convenience fees month after month,

8  Defendant engaged in a continuing pattern and course of conduct as opposed to an unrelated, discrete act.

9  In the scenario alleged herein, if the action is filed within one year of the most recent violation of the

10  Class Representative, Louis, Defendant's entire course of conduct is at issue as to the class

11      19.    Defendant Conservice has engaged in a pattern of conduct that by its very nature involves

12  repeated conduct rather than discrete acts. A California Court of Appeal has held that the continuing

13  violation doctrine applies to Rosenthal Act claims. (*Komorova v. Nat'l Credit Inc.* (2009) 175

14  Cal.App.4th 324, 343-46, 95 Cal. Rptr. 3d 880 (2009).) Under this doctrine, when allegedly unlawful

15  acts constitute a "continuing pattern and course of conduct," then suit regarding the entire course of

16  conduct is timely if the complaint is filed within one year of the most recent violation.

17      20.    In *DiFlauro v. Bank of America, N.A.* (C.D. Cal., Dec. 2, 2020, No. CV 20-5692 DSF

18  (SKX)) 2020 WL 10111966, the court found that the continuing violation theory extended the statute of

19  limitations for illegal pay-to-pay fees under a Rosenthal Act claim. There, as here, the Plaintiff alleged

20  recurring, illegal pay-to-pay fees, but just one of them was made within the one-year statute of limitations.

21  Similarly, here, Class Representative Louis alleges that Defendant Conservice assessed several

22  convenience fees within one year of filing the Complaint. As such, the statute of limitations on Plaintiff's

23  Rosenthal Act claims should be extended to encompass the alleged violations against class Plaintiffs.

24      21.    Finally, both the Ninth Circuit and California Supreme Court have held that the 4-year

25  statute of limitations of the UCL "admits of no exceptions" and controls even if the "borrowed" law being

26  sued upon provides a shorter period of limitations. (*See Cortez v.Air   Prods. Co.* (2000) 23 Cal4th 163,

27  178-172d 518, 999 P.2d 706 (2000), *Denicolo v. Viking Servs.* 2021 U.S. Dist. LEXIS 134414 at p. 7.)

28  As such, the four-year statute of limitations controls here.

**CLASS ALLEGATIONS**

22.   Plaintiff brings this action under California Code of Civil Procedure § 382 individually and for the benefit of all others similarly situated, or alternatively, as a common law class action.

23.   Excluded from each Class are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; ( 4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

24.   Plaintiff proposes to represent the following class, subject to modification after discovery and case development:

>     a.   **Rosenthal Class**: All citizens of the State of California based residential leases who have used Conservice's website, app or ebills to pay their utilities when they were due and owing and who paid a "pay-to-pay" service fee for making a payment to Conservice during the four-year statute of limitations through the date the class is certified.

25.   **Ascertainability**: Membership in the Class can be determined based on Defendant's records. Individual members will be identifiable from Defendant's records, which include addresses and lease agreements.

26.   **Numerosity**: The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but on information and belief it exceeds thousands and thus, individual joinder in this case is impracticable. California, the largest rental market in the US, with an estimated 14 million renters (see above footnote 2). The members can be identified through Defendant's databases and records.

27.   **Predominant Common Questions**: The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

>     a.   Whether Defendant assessed pay-to-pay fees on Class Members
>     b.   Whether Defendant was a licensed debt collector;

c. Whether there is a law that permits Defendant's pay-to-pay fees (<u>Note</u>: It is not enough that applicable law fails to prohibit the fee—a fee is only "permitted" if the applicable law *specifically allows* for the charge);

d. Whether Defendant's conduct violated the UCL; and

e. Whether the Class Members were damaged by Defendant's conduct.

**28.    Adequacy of Representation:** Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class Members, and proposed class members will be ably represented by counsel. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

29.    **Superiority of Class Action:** Proceeding as a class will confer substantial benefits such that it is superior to the alternatives. Because some individual, proposed class members may have paid little in fees, and therefore may not be able to justify the costs of individual litigation, class certification will allow those class members to litigate their claims efficiently and economically. Likewise, resolution of the same consumer protection claims in a single case is efficient for the judicial system and will avoid any potential for inconsistent outcomes arising from other cases simultaneously raising the same issue.

30.    Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery or otherwise.

**FIRST CAUSE OF ACTION**
**Violations of the Rosenthal Act**
**Cal. Civ. Code § 1788 et seq.**
**(On Behalf of Plaintiff Louis and Class Members)**

31.    Plaintiff incorporate by reference the foregoing allegations as if fully set forth herein.

32.    The Rosenthal Act is "'a remedial statute [that] should be interpreted broadly in order to effectuate its purpose.'" (*Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 340, 95 Cal.Rptr.3d 880.)

33.    Plaintiff's utility billing through Conservice created an obligation to pay and constitute a "consumer debt" pursuant to Cal. Civ. Code § 1788.2(f). This is because each monthly bill sent to Plaintiff

by Conservice was for past service (e.g., June bill was for electricity generated in May), thereby embodying a transaction in which services were acquired on credit primarily for personal, family, or household purposes—i.e., a consumer credit transaction per Civil Code section 1788.2(e). Further, Plaintiff Louis is a natural person and Conservice is a person per Cal. Civ. Code § 1788.2(g) because it is a corporation.

34.     By collecting tenants' utility payments via its online portal, ebills and using its app, "MyCUC," Defendant is a debt collector per Cal. Civ. Code § 1788.2(b) and (c), as the website, app and ebills Conservice sends out to tenants constitute media used or intended to be used for debt collection. Further, Defendant, in the ordinary course of business, regularly, on behalf of others, engages in debt collection. Defendant Conservice even boasts on its website that it will "Increase the accuracy, efficiency, and timeliness of the billing process with our customizable utility billing service." Further, Conservice states that it has sent out "36,972,789" resident **bills** year to date.

35.     Conservice's bills to Plaintiff and the Class were intended to collect consumer debts from Plaintiff and Class Members, and resulted in collection of alleged consumer debts from Plaintiff and the Class - including utility charges allegedly due to their landlords and illegal pay-to-pay fees.

36.     The utility bills collected from Plaintiff by Conservice and at issue here were all "due and owing" at the time of payment by Plaintiff, per Cal. Civ. Code § 1788.2(d).

37.     By assessing a pay-to-pay fee when Plaintiff made a utility payment online through Conservice's website or its app or as a result of its ebills, Defendant engages in at least three prohibited practices under the Rosenthal Act:

  a.  Making a "false representation that the consumer debt may be increased by . . . service fees . . . or other charges if, in fact, such fees or charges may not legally be added to the existing obligation," *see* Cal. Civ. Code § 1788.13(e);

  b.  "Charg[ing] for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt," where such charge is not "permitted by law" in violation of Cal. Civ. Code, § 1788.14(b)); and

  c.  Violating Cal. Civ. Code, § 1788.17, which incorporates the Fair Debt Collection Practices Act ("FDCPA") by reference, so that a violation of the FDCPA is a *per se*

violation of the Rosenthal Act via: (1) charging "any amount (including any interest, fee, charge, or expense incidental to the principal obligation)" that is not expressly authorized by the agreement creating the debt (e.g. Lease) or permitted by law in violation of 15 U.S.C. § 1692f(1), and (2) making false, deceptive, or misleading representations in connection with the collection of any debt, including the character or amount of the debt in violation of 15 U.S.C. § 1692e(2)(A).

38.     With respect to paragraph 38(c) above, Defendant Conservice is a debt collector as defined by the FDCPA because it uses an instrumentality of interstate commerce (e.g., the internet) in a business that regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

39.     The overwhelming majority of jurisdictions have almost unanimously held that the FDCPA is a strict liability statute. As such, a consumer need not show intentional conduct by the debt collector to be entitled to damages.  By violating Cal. Civ. Code § 1788.13(e) and 1788.17, in legal effect, a federal liability standard of strict liability is embedded in state law. (*Young v. Midland Funding LLC* (2023) 91 Cal.App.5th 63, 89-90.)

40.     The fees charged by Conservice are far in excess of the actual costs incurred by it in connection with the payment transactions. On information and belief, Conservice's costs for processing payments online are less than $0.50 per transaction. (Association for Financial Professionals, *Payments Cost Benchmarking Survey*, at 8 (2015).)

41.     As a proximate result of Defendant's violations of the Rosenthal Act and Financial Code as enumerated above, including Plaintiff's payment of illegal "service" fees for collection activity that itself was illegal because Defendant lacked a license to collect debt, Plaintiff Louis has been damaged in an amount subject to proof. As such, Plaintiff and Class Members are entitled to actual and statutory damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for knowing or willful violations pursuant to Cal. Civ. Code §§ 1788.30(b), 1788.17, and 1788.32, to the full extent provided by law; remedies set forth at 15 U.S.C. §1692k; and reasonable attorneys' fees and costs under Cal. Civ. Code § 1788.30(c), in an amount to be determined at trial by a jury.

///

42.     As a proximate result of Defendant's violations of the Rosenthal Act and Financial Code as enumerated above, Plaintiff and Class Members have suffered mental anguish and emotional distress. For example, Plaintiff, who works as a stylist in the fashion industry and suffered a loss of income during the COVID pandemic, suffered stress and anxiety resulting from Conserve's illegal collection activity, and its illegal charges, and from the fact that she paid money to Conserve for its illegal activity, which she needed for groceries, gas, etc.

## SECOND CAUSE OF ACTION
### Violation of The California Unfair Practices Act §§ 17200 et seq. ("UCL")
### (On Behalf of Plaintiff and Class Members)

43.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

44.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice. (Cal. Bus. & Prof. Code § 17200.) Conserve has engaged in the following non-exhaustive list of conduct proscribed by California Business and Professions Code section 17200 et seq.:

a.   Engaging in the business of debt collection in California without first obtaining a license pursuant to Fin. C. § 100001;

b.   Collecting a pay-to-pay convenience fee in contravention of §§ 1788.14(b), which expressly forbid debt collectors from "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt";

c.    Making a "false representation that the consumer debt may be increased by . . . service fees . . . or other charges if, in fact, such fees or charges may not legally be added to the existing obligation" in violation of Cal. Civ. Code § 1788.13(e); and

d.   Violating Cal. Civ. Code, § 1788.17, which incorporates the Fair Debt Collection Practices Act ("FDCPA") by reference, so that a violation of the FDCPA is a *per se* violation of the Rosenthal Act via (1) making false, deceptive, or misleading representations in connection with the collection of any debt, including the character or amount of the debt in violation of 15 U.S.C. § 1692e(2)(A).

///

45.     Plaintiff Louis suffered economic injury when she was forced to pay illegal service fees through Conservice's website, app or ebills. Plaintiff and other members of the Class were assessed and paid charges that they did not legally owe, including the service fees assessed and paid to compensate Conservice for its illegal activity, which damaged Plaintiff and Class Members.

46.     As a result of the conduct described above, Defendant has been unlawfully enriched at the expense of Plaintiff and members of the Class by obtaining revenues and profits that it would not have otherwise obtained absent its unlawful conduct. Plaintiff seeks restitution pursuant to California Business and Professions Code section 17535 to restore to Plaintiff and Class Members all monies Conservice acquired as a result of its unlawful and deceptive conduct.

47.     Plaintiff and Class Members have suffered injury in fact and has lost money or property as a direct and proximate result of Conservice's unlawful and deceptive conduct, and will continue to suffer such injury unless Conservice's conduct is enjoined and restrained by the Court. Plaintiff therefore seeks an injunction pursuant to California Business and Professions Code section 17535 prohibiting Conservice from engaging in the unlawful and deceptive conduct described above. Otherwise, Plaintiff and members of the California Class may be irreparably harmed and/or denied an effective and complete remedy.

### THIRD CAUSE OF ACTION
**Violation of The California Unfair Practices Act §§ 17500 et seq.**
**(On Behalf of Plaintiff and the Class)**

48.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

49.     Defendant has engaged in the following non-exhaustive list of conduct proscribed by California Business and Professions Code section 17500 et seq.:

    a.  Knowingly making and causing to be made false and deceptive statements to Plaintiff and the public regarding its status as a legitimate debt collector, even while knowing it was unlicensed to collect debt in California. These material misstatements were made with the intent to secure debt collection from tenants who did not know the truth about Conservice's illegal collection activity, nor the fact that the service fees collected by Conservice were illegal, irrespective of its license status.

Screenshots from Conservice website as of Feb. 28, 2024



b. Representing to the public that it had the legal right to collect its service/convenience fees, as shown in the FAQ section of its website below, despite knowing such fees were illegal under the Rosenthal Act.



50.    Members of the public were likely to be deceived by the aforementioned representations by Conservice. Conservice had a duty to disclose material information to Plaintiff and the public when it undertook to make public representations about its status as a debt collector. Instead, Conservice knowingly and actively concealed information from the public.

51.    Plaintiff has suffered injury in fact and has lost money or property as a direct and proximate result of Conservice's unlawful and deceptive conduct in the form of the illegal service fees collected by it and the fact that Plaintiff relied on Conservice's "welcome" email in paying her utilities and the attendant service fees. Plaintiff and Class Members will continue to suffer such injury unless Conservice's conduct is enjoined and restrained by the Court. Plaintiff therefore seeks an injunction pursuant to California Business and Professions Code section 17535 prohibiting Conservice from engaging    in    the    unlawful    and    deceptive    conduct    described    above. ///

52. Moreover, Conservice was unjustly enriched as a direct and proximate result of its unlawful and deceptive conduct. Plaintiff and Class Members therefore seek restitution pursuant to California Business and Professions Code section 17535 to restore all monies Conservice acquired as a result of its unlawful and deceptive conduct.

**For Declaratory Relief**
**(On Behalf of Plaintiff and the Class)**

53. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

54. Plaintiff contend that Defendant's pay-to-pay fees assessed when Class Members pay their utilities via Defendant's ebills, online portal or app are illegal under the Fin. C § 100001, Cal. Civ. Code §§ 1788.14(b), 1788.17, 1788.13(e), and Business and Professions Code §§ 17200 et seq. There are no laws that permit these fees and no provision allowing for them in the applicable lease agreements.

55. Plaintiff is informed and believes and based thereon alleges that Defendant denies each of the assertions in paragraph 54 above.

56. This presents an actual, judicable controversy between the parties relating to the actions by Conservice in their dealings with Plaintiff and members of the Classes, relating to the legitimacy of charges assessed as a result of those actions. In particular, Conservice has acted as a debt collector with respect to Class Members without a license to collect debts. Conservice's actions as a debt collector include collecting payments for utility fees and associated charges from Plaintiff and Conservice Class Members, as well as pay-to-pay Fees, when Conservice was not entitled to collect those fees.

57. Plaintiff therefore seeks a judicial determination that Defendant's pay-to-pay fees are illegal pursuant to the Rosenthal Act, Financial Code and whether Defendant has engaged in "unlawful, unfair or fraudulent business acts or practices" or "unfair deceptive and untrue or misleading advertising," related to its Pay-to-Pay fees in violation of California Business & Professions Code Sections 17200, et. seq.

58. A judicial determination is necessary and appropriate at this time under these circumstances.

///

///

1

## **PRAYER FOR RELIEF**

2
WHEREFORE, Plaintiff on behalf of herself and the proposed Class respectfully requests that

3
the Court enter an order:

4
A.      Certifying this case as a class action on behalf of the classes defined above;

5
B.      Award damages, including compensatory and exemplary damages, to Plaintiff and the

6
Classes in an amount to be determined at trial;

7
C.      Award statutory damages and/or penalties to Plaintiff and the Classes;

8
D.      Permanently enjoin Defendant from the wrongful and unlawful conduct alleged herein,

9
including making false and misleading statements regarding status as a debt collector and the

10
legitimacy of its collection fees;

11
E.      Award Plaintiff and the Class their expenses and costs of suit, including attorney's fees,

12
litigation expenses and costs of suits;

13
F.      Compensatory, nominal, and punitive damages;

14
G.      A declaration that Defendant Conservice may not assess pay-to-pay fees against Class

15
members in any amount for fees paid through its ebills, website, or app; and

16
H.      Award such further relief as the Court deems appropriate.

17

## **DEMAND FOR JURY TRIAL**

18
Plaintiff demands a jury on all issues so triable.

19
**THE LAW OFFICES OF KENNETH TOWNSEND**

20

21
Dated:  March 14, 2024          By:  _____

22
Kenneth Townsend, Esq.

23
Daniel O'Leary. Esq.
*Attorney for Plaintiff and the Putative Class*

24

25

26

27

28

# EXHIBIT A

# LEASE CONTRACT

Date of Lease Contract: _____ **September 29, 2023** _____
(when the Lease Contract is filled out)

*This is a binding document.*
*Read carefully before signing.*

## Moving In — General Information

**1. PARTIES.** This Lease Contract (sometimes referred to as the "lease") is between *you*, the resident(s) *(list all people signing the Lease Contract)*:

**Amanda Jolicoeur - Louis**

and *us*, the owner: **Randolph Lofts**

*(name of title holder or published and recorded fictitious business name).* You've agreed to rent Unit No. _____ **MH0806** _____, at **215 W. 6th Street**

_____ *(street address)* in **Los Angeles**
*(city),* California, _____ **90014** _____ *(zip code)* (the "Dwelling") for use as a private residence only. The terms "you" and "your" refer to all residents listed above. The terms "we," "us," and "our" refer to the owner listed above (or any of owner's successors in interest or assigns). Written notice to or from our managers constitutes notice to or from us. If anyone else has guaranteed performance of this Lease Contract, a separate Lease Contract Guaranty for each guarantor is attached.

**2. OCCUPANTS.** The dwelling will be occupied only by you and *(list all other occupants not signing the Lease Contract):*

No one else may occupy the dwelling. Persons not listed above must not stay in the dwelling for more than ____ **10** ____ consecutive days without our prior written consent, and no more than twice that many days in any one month. If the previous space isn't filled in, two days per month is the limit.

**3. LEASE TERM.** The initial term of the Lease Contract begins on the ____ **30th** ____ day of ____ **September** ____, ____ **2023** ____, and ends at 11:59 p.m. the ____ **29th** ____ day of ____ **September** ____, ____ **2024** ____.
**This lease contract will automatically renew month-to-month unless (1) either party gives at least ____ 60 ____ days written notice of termination, (2) Intent to Move-Out as Required by Paragraph 48 (Move-Out Notice), or (3) if this property is subject to the Tenant Protection Act of 2019, and you have a written lease terminated on or after January 1, 2020, we require you to execute a written extension or renewal of the lease for an additional term of similar duration with similar provisions, provided that those terms do not violate this section or any other provision of law.** If the number of days isn't filled in, at least 30 days written notice is required. If the Residents have been in possession for longer than one year, Landlord shall provide Residents with at least a 60 day written notice to terminate tenancy. Residents shall comply with all notice provisions in paragraph 32 (Default by Resident).

**4. SECURITY DEPOSIT.** Unless modified by addenda, the total security deposit at the time of execution of this Lease Contract for all residents in the dwelling is $ ____ **500.00** ____, due on or before the date this Lease Contract is signed. See paragraphs 52 (Security Deposit Deductions and Other Charges) and 53 (Deposit Return, Surrender, and Abandonment) for security deposit return information. The security deposit may not exceed 2 month's rent for an unfurnished dwelling, and 3 month's rent for a furnished dwelling. The security deposit may not exceed two and a half month's rent for an unfurnished dwelling, and three and a half month's rent for a furnished dwelling in the event you install water furniture.

**Santa Cruz County Residents.** You have the right to receive yearly interest on your security deposit at a rate of _____%. We may be liable for damages if we don't comply under Santa Cruz County Code §8.42 and Cal Civ. Code §1950.5.

**5. KEYS.** You will be provided ____ **1** ____ Dwelling key(s), ____ **1** ____ mailbox key(s), ____ **0** ____ FOB(s), and/or ____ **0** ____ other access device(s) for access to the building and amenities at no additional cost at move-in. If the key, FOB, or other access device is lost or becomes damaged during your tenancy or is

not returned or is returned damaged when you move out, you will be responsible for the costs for the replacement and/or repair of the same. You agree not to clone or otherwise duplicate your assigned access device(s), Dwelling key(s), mailbox key(s), or FOB(s) without express written permission from us.

**6. RENT AND CHARGES.** Unless modified by addenda, you will pay $ ___1864.00___ per month for rent, payable in advance and without demand:

- ☒ at the on-site manager's office, or
- ☒ at our online payment site, or
- ☒ at **WIPS**

_____
_____
_____
_____.

Prorated rent of $ ___62.13___ is due for the remainder of *[check one]*: ☒ 1st month or ☐ 2nd month, on ___September 30___, ___2023___.

Otherwise, you must pay your rent on or before the ___5th___ day of each month (due date) with no grace period. Cash is unacceptable without our prior written permission. You must not withhold or offset rent unless authorized by statute. We may, at our option, require at any time that you pay all rent and other sums in cash, certified or cashier's check, money order, or one monthly check rather than multiple checks. At our discretion, we may convert any and all checks via the Automated Clearing House (ACH) system for the purposes of collecting payment. Rent is not considered accepted, if the payment/ACH is rejected, does not clear, or is stopped for any reason. If you don't pay all rent on or before the expiration of ___5___ days after the due date, you'll be delinquent. (If the previous field is blank, then your rent will be delinquent if it is not paid in full by the expiration of one business day after the due date.) You will be obligated to pay to us a fee of $ ___150.00___ if you fail to pay any amount when due under this Contract. You agree that this amount is the result of our reasonable endeavor to approximate actual losses (administrative wages, interest on late rent accruing) caused by the late payment of rent. The Parties agree that it is impracticable and extremely difficult to affix the actual damage caused by payment of late rent. You'll also pay a charge of $25.00 for each returned check or rejected electronic payment. For additional returned checks you'll pay a charge of $35.00. If you are delinquent, all remedies under this Lease Contract will be authorized. If you are delinquent, all remedies under this Lease Contract and California law will be authorized. A negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill your credit obligations under this Lease. All payment obligations under this Lease Contract shall constitute rent under this Lease Contract.

☐ **Rent Concession.** If this box is checked, you and we have entered into an Addendum for a Rent Concession. The Addendum is attached. Please read it thoroughly.

**7. UTILITIES.** We'll pay for the following items, if checked:

- ☐ water;  ☐ gas;  ☐ electricity;
- ☐ master antenna  ☐ wastewater;
- ☐ trash;  ☐ cable TV;
- ☒ other **None** _____
_____

You'll pay for all other utilities, related deposits, and any charges, fees, or services on such utilities. You must not allow utilities to be disconnected— including disconnection for not paying your bills— until the lease term or renewal period ends. Cable channels that are provided may be changed during the Lease Contract term if the change applies to all residents. Utilities may be used only for normal household purposes and must not be wasted. If your electricity is ever interrupted, you must use only battery-powered lighting. If any utilities are submetered for the dwelling unit, or prorated by an allocation formula, we will attach an addendum to this Lease Contract in compliance with state agency rules or city ordinance.

**8. INSURANCE.** Our insurance does not cover the loss of your personal possessions or personal injury and it is recommended that you consider purchasing renter's insurance and flood insurance to insure your possessions from loss due to fire, flood, or other risk of loss. We are not responsible to any resident, guest, or occupant for damage or loss of personal property or personal injury from (including but not limited to) fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, hurricane, negligence of other residents, occupants, or invited/uninvited guests or vandalism unless otherwise required by law.

In addition, we urge all residents, and particularly those residing in coastal areas, areas near rivers, and areas prone to flooding, to obtain flood insurance. Renter's insurance may not cover damage to your property due to flooding. A flood insurance resource which may be available includes the National Flood Insurance Program managed by the Federal Emergency Management Agency (FEMA).

We ☐ require ☒ do not require you to get your own insurance for losses to your personal property or injuries due to theft, fire, water damage, pipe leaks and the like.

If renter's insurance is required, you shall maintain at all times during the Term of this Lease, at your sole expense, a renter's insurance policy, or its equivalent, issued by a licensed insurance company in a minimum policy coverage amount of $ ___100000.00___, and you shall provide us with proof of such insurance to our satisfaction. If no box is checked, renter's insurance is not required.

Additionally, you are *[check one]* ☒ required to purchase personal liability insurance ☐ not required to purchase personal liability insurance. If no box is checked, personal liability insurance is not required. If required, failure to maintain personal liability insurance is an incurable

breach of this Lease Contract and may result in the termination of tenancy and eviction and/or any other remedies as provided by this Lease Contract or state law.

The dwelling ☐ is ☒ is not located in a special flood hazard area or an area of potential flooding. We have knowledge that the dwelling is in a special flood hazard area if: (1) we received written notice from any public agency, or, (2) our mortgage holder requires us to carry flood insurance, or (3) we currently carry flood insurance. You may obtain more information about hazards, including flood hazards, that may affect your dwelling from the Internet Web site of the Office of Emergency Services (http://www.caloes.ca.gov/). The Internet Web site address for the MyHazards tool is http://myhazards. caloes.ca.gov/. Our insurance does not cover the loss of the tenant's personal possessions. We recommend that you consider purchasing renter's insurance and flood insurance to insure your possessions from loss due to fire, flood, or other risk of loss. We are not required to provide additional information concerning the flood hazards to the property. The information provided herein is deemed adequate to inform you.

**9. LOCKS AND LATCHES.** We will provide an operable deadbolt lock on each main swinging entry door of the dwelling in compliance with California Civil Code, Section 1941.3, subject to statutory exceptions. We will provide window security or locking devices as required by that statute. Keyed lock(s) will be rekeyed after the prior resident moves out. The rekeying will be done before you move in. You must notify us immediately of any inoperable door, window, latch, or lock. You may at any time ask us to change or rekey locks or latches during the Lease Term. We must comply with those requests, but you must pay for them, unless otherwise provided by law.

**Payment for Rekeying, Repairs, Etc.** Unless otherwise required by law, you must pay for all repairs or replacements arising from misuse or damage to devices by you or your household members, occupants, or guests during your occupancy. You may be required to pay in advance if we notify you within a reasonable time after your request that you are more than 30 days delinquent in reimbursing us for repairing or replacing a device which was misused or damaged by you, your guest or an occupant; or if you have requested that we repair or change or rekey the same device during the 30 days preceding your request and we have complied with your request. Otherwise, you must pay immediately after the work is completed.

## Special Provisions and "What If" Clauses

**10. SPECIAL PROVISIONS.** The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Lease Contract and will supersede any conflicting provisions of this printed Lease Contract form.

<u>See Additional Special Provisions</u>
_____
_____
_____
_____
_____
_____
_____

See any additional special provisions.

**11. EARLY MOVE-OUT.** If you move out early without our written consent or without paying us a negotiated lease termination fee, you will be liable to us for actual damages, including liability for rents during the entire remainder of your lease term (less mitigation) and for the cost of finding and processing a replacement resident, paying locator service fees, cleaning, make-ready costs, etc. In addition to any other rights and remedies allowed by law, we shall have the remedy set forth in Civil Code Section 1951.2.

**12. REIMBURSEMENT.** You must promptly reimburse us for loss, damage, government fines, or cost of repairs or service in the Community due to a violation of the Lease Contract or rules, improper use, or negligence by you or your guests or occupants. **Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for—repairs, replacement costs, and damage to the following that result from you or your invitees, guests, or occupants' negligence or intentional acts: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your dwelling.** We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

**13. PROPERTY LEFT IN DWELLING.**

**Storage After Surrender, Abandonment, or Eviction.** We may remove and/or store all property remaining in the dwelling or in common areas (including any vehicles you or any occupant or guest owns or uses) if you are judicially evicted or if you surrender or abandon the dwelling (see definitions in paragraph 53 (Deposit Return, Surrender, and Abandonment)). We will use reasonable care in storing the property; but we're not liable for casualty loss, damage, or theft unless caused by deliberate or negligent act on our part. We may store the property either in the dwelling or in another safe place until (1) we release the personal property described in the notice to you or other persons we reasonably believe to be the owner of the property and we shall not require you to pay the cost of

storage if its owner reclaims the property within two days of you vacating the dwelling, (2) charges (and actual advertising/sale expenses) are paid in full after 2 days, or (3) 18 days have elapsed after "Notice of Right to Reclaim Abandoned Property" has been mailed (or 15 days after it is personally served) by us, as provided below as otherwise required by law.

**Notice.** The "Notice of Right to Reclaim Abandoned Property" must be in substantial compliance with the statutory form in Section 1984 or 1985, California Civil Code. The notice must be given by personal delivery to you or via regular U.S. mail to you at your last known address or to the person believed by us to be the owner.

**Redemption.** If we've stored property as provided above, you or the person believed by us to be the owner may redeem the property by paying all storage charges (and any actual advertising/sale expenses) on or before the expiration of the Notice of Right to Reclaim Abandoned Property as required by law. The charges for storage will be the fair rental value of the rental space reasonably required for the storage. We may return redeemed property at the place of storage, the management office, or the dwelling (at our option). We may require payment by cash, money order, or certified check. We may also send a copy to your email address.

**Other disposition or Sale.** If all the property being stored is believed by us to be worth less than $700 and it has not been redeemed, we may keep, throw away, or give away the property after the 18th day following the giving of the "Notice of Right to Reclaim Abandoned Property" above. If all of the property is believed by us to be worth $700 or more, we may (1) release the personal property described in the notice to the former tenant and shall not require the former tenant to pay the cost of storage if the property remained in the dwelling and the former tenant or other person reasonably believed by the landlord to be its owner reclaims the property within two days of vacating the dwelling, (2) we release the property to the person believed by us to be the owner, if all storage charges (and actual advertising/sale expenses) are paid in full after 2 days of storage, or (3) sell the property at public sale in compliance with the procedures of Section 1988 of the California Civil Code. Sale may be subject to any third-party ownership or lien claims, must be to the highest cash bidder, and may be in bulk, in batches, or item-by-item. You and the landlord may bid at the sale. Excess sums will be paid over to the county in accordance with statute.

State law permits former tenants to reclaim abandoned personal property left at the former address of the tenant, subject to certain conditions. You may or may not be able to reclaim property without incurring additional costs, depending on the cost of storing the property and the length of time before it is reclaimed. In general, these costs will be lower the sooner you contact your former landlord after being notified that property belonging to you was left behind after you moved out.

**14. FAILING TO PAY FIRST MONTH'S RENT.** If you don't pay the first month's rent when or before the Lease Contract begins, we may end your right of occupancy and recover damages, including future rents (less any mitigation), reletting charges, attorney's fees (consistent with paragraph 32 (Default by Resident)), court costs, and other lawful charges. Our rights and remedies under paragraphs 11 (Early Move-Out) and 32 (Default by Resident) apply to the failure to pay first month's rent upon execution of the Lease Contract.

**15. RENT INCREASES AND LEASE CONTRACT CHANGES.** No rent increases or Lease Contract changes are allowed before the initial Lease Contract term ends, except for changes allowed by any special provisions in paragraph 10 (Special Provisions), by a written addendum or amendment signed by you and us, or by reasonable changes of dwelling rules allowed under paragraph 19 (Community Policies or Rules), or as otherwise allowed by law. We will give you a minimum of 30 days notice if you are on a month to month tenancy before we increase the rent (a maximum of 10% increase over the previous 12 months). We will give you at least 90 days notice during a month to month tenancy before we raise the rent more than 10% (over the previous 12 months), unless the increase is caused by a change in your income or family composition as determined by a recertification required by statute or regulation.

**16. DELAY OF OCCUPANCY.** If occupancy is or will be delayed for construction, repairs, cleaning, or a previous resident's holding over, we're not responsible for the delay. The Lease Contract will remain in force subject to: (1) abatement of rent on a daily basis during delay; and (2) your right to terminate as set forth below. Any termination notice must be in writing. After termination, you are entitled only to refund of deposit(s) and any rent paid. Rent abatement or lease termination does not apply if delay is for cleaning or repairs that don't prevent you from occupying the dwelling.

If there is a delay and we haven't given notice of delay as set forth immediately below, you may terminate up to the date when the dwelling is ready for occupancy, but not later.

(1) If we give written notice to any of you when or after the Lease Contract begins—and the notice states that occupancy has been delayed because of construction or a previous resident's holding over, and that the dwelling will be ready on a specific date—you may terminate the Lease Contract within 3 days of your receiving the notice, but not later.

(2) If we give written notice to any of you before the beginning of the lease term and the notice states that construction delay is expected and that the dwelling will be ready for you to occupy on a specific date, you may terminate the Lease Contract within 7 days after any of you receives written notice, but not later. The readiness date is considered the new beginning date of the lease term for all purposes. This new date may not be moved to an earlier date unless we and you agree.

**17. AD VALOREM TAXES/FEES AND CHARGES - ADDITIONAL RENT.** Unless otherwise prohibited by law, if, during the term of this Agreement, any locality, city, state, or Federal Government imposes upon Us, any fee, charge, or tax, which is related to or charged by the number of occupants, or by the apartment unit itself, such that we are charged a fee, charge, or tax, based upon your use or occupancy of the apartment, we may add this charge as Additional Rent, during the term of the Lease Contract, with thirty (30) days advance written notice to you. After this written notice (the amount or approximate amount of the charge, will be included), you agree to pay, as Additional Rent, the amount of the charge, tax or fee imposed upon us, as a result of your occupancy. As examples, these charges can include, but are not limited to: any charges we receive for any zoning violation, sound, noise or litter charge; any charge under any nuisance or chronic nuisance type statute, 911 or other life safety, per person, or per unit charge or tax and any utility bill unpaid by you, which is then assessed to us for payment.

**18. DISCLOSURE RIGHTS.** During your initial lease application and throughout your tenancy, we may obtain information on you, your rental history, or other personal information that may be provided to law-enforcement, government agencies, or other business entities for other business purposes, at a third party's request. Upon verifiable request from you, we will provide you with any personal information collected, or disclosed for business purposes relating to you, including but not limited to: categories and specific pieces of personal information collected, the categories of sources from which the personal information is collected, the business or commercial purpose for collecting or selling personal information, and the categories of third parties with which we share personal information.

**(A)** Should we choose to collect your personal information, we will, at or before the point of collection, inform you as to the categories of personal information to be collected and the purposes for which the categories of personal information will be used. Upon verifiable request from you, we will disclose and deliver the personal information the we collected about you, free of charge, within 45 days of the verified request.

**(B)** Upon verifiable request from you to delete personal information from our records, we will do so, and direct service providers to delete any personal information in their records, subject to certain exceptions.

**(C)** We will not sell personal information to third parties.

**(D)** We do not discriminate against any resident that exercises any of their rights under the California Consumer Privacy Act ("CCPA"). However, we may charge different prices or provide a different quality of goods or services if the difference is reasonably related to the value provided to you by your data. Further, we may offer financial incentives to you for the collection, sale, or deletion of personal information.

**(E)** The obligations imposed on us by the CCPA cannot, and will not, restrict our ability to comply with federal, state, or local laws; comply with civil, criminal, or regulatory inquiry, investigation, subpoena, or summons by with federal, state, or local authorities; cooperate with law enforcement relating to violations of with federal, state, or local laws; exercise legal claims; collect, use, retain, sell, or disclose aggregate or deidentified consumer information; or collect or sell personal information where that information is based on commercial conduct wholly outside of California.

---

## While You're Living in the Dwelling Unit

**19. COMMUNITY POLICIES OR RULES.** You and all guests and occupants must comply with any written Community rules, regulations and policies, including instructions for care of the dwelling and the Community. Our rules and Community Policies are considered part of this Lease Contract and are incorporated herein as fully set out word for word. We may make reasonable changes to written rules, effective immediately, if they are distributed and applicable to all units in the Community and do not change dollar amounts on page 1 of this Lease Contract.

**20. LIMITATIONS ON CONDUCT.** The dwelling and other areas reserved for your private use must be kept clean and free of trash, garbage, and other debris. Trash must be disposed of at least weekly in appropriate receptacles in accordance with local ordinances. Doors, windows, and other passageways inside the dwelling must be clear and unobstructed for access to every room in the dwelling, and may be used only for entry or exit. You agree to keep all passageways and common areas free of obstructions such as trash, storage items, and all forms of personal property. No person shall ride or allow bikes, skateboards, or other similar objects in the passageways. You must maintain the dwelling free from clutter or any other condition which may restrict air flow, encourage mold growth, invite pests, creates a fire hazard, or otherwise degrades the habitability of the dwelling. Passageways may be used only for entry or exit. Any swimming pools, saunas, spas, tanning beds, exercise rooms, storerooms, laundry rooms, and similar areas must be used with care in accordance with dwelling rules and posted signs. Glass containers are prohibited in all common areas. You, your occupants, or guests may not anywhere in the Community: use candles

or use kerosene lamps or kerosene heaters without our prior written approval; cook on balconies or outside; or solicit business or contributions. Unless otherwise provided by law, conducting any kind of business in your dwelling or in the Community is prohibited—except that any lawful business conducted "at home" by computer, mail, or telephone is permissible if customers, clients, patients, or other business associates do not come to your dwelling for business purposes. You or your guests may not use the dwelling, or any other part of the property, to violate, or in violation of, any law, statute, or ordinance. We may regulate: (1) the use of patios, balconies, and porches; (2) the conduct of furniture movers and delivery persons; and (3) recreational activities in common areas. You'll be liable to us for damage caused by you or any guests or occupants.

We may exclude from the Community guests or others who, in our judgment, have been violating the law, violating this Lease Contract or any dwelling rules, or disturbing other residents, neighbors, visitors, or owner representatives. We may also exclude from any outside area or common area a person who refuses to show photo identification or refuses to identify himself or herself as a resident, occupant, or guest of a specific resident in the Community.

**21. PROHIBITED CONDUCT.** You, your occupants or guests, or the guests of any occupants, may not engage in the following activities: behaving in a loud or obnoxious manner; disturbing or threatening the rights, comfort, health, safety, or convenience of others (including our agents and employees) in or near the Community; disrupting our business activities; manufacturing, cultivating, delivering, selling, possessing with intent to deliver or sell, or otherwise possessing or using a controlled substance or drug paraphernalia for use with a controlled substance (Note: "Controlled substance" includes so-called "medical marijuana" under the law of California and any state having similar laws. The Resident agrees not to violate any law or ordinance. Marijuana is listed as a Class 1 scheduled drug under federal law, and is a prohibited controlled substance. (21 United States Code sections 801-904: 21 United States Code section 841(a)(1); 21 United States Code section 812(b)(1)); engaging in or threatening violence; possessing a weapon prohibited by state law; discharging a firearm in the Community; displaying or possessing a gun, knife, or other weapon in the common area in a way that may alarm others; storing anything in closets having gas appliances; tampering with utilities or telecommunications; bringing hazardous materials into the Community; or injuring our reputation by making bad faith allegations against us to others.

**22. PARKING.** We may regulate the time, manner, and place of parking cars, trucks, motorcycles, bicycles, boats, trailers, and recreational vehicles by anyone. We may have unauthorized or illegally parked vehicles towed under an appropriate statute. A

vehicle is unauthorized or illegally parked in the Community if it:

(1) has a flat tire or other condition rendering it inoperable; or

(2) is on jacks, blocks or has wheel(s) missing; or

(3) has no current license plate or no current registration and/or inspection sticker; or

(4) takes up more than one parking space; or

(5) belongs to a resident or occupant who has surrendered or abandoned the dwelling; or

(6) is parked in a marked handicap space without the legally required handicap insignia; or

(7) is parked in space marked for manager, staff, or guest at the office;or

(8) blocks another vehicle from exiting; or

(9) is parked in a fire lane or designated "no parking" area; or

(10) is parked in a space marked for other resident(s) or unit(s); or

(11) is parked on the grass, sidewalk, or patio; or

(12) blocks garbage trucks from access to a dumpster; or

(13) belongs to a resident and is parked in a visitor or retail parking space.

**23. RELEASE OF RESIDENT.** Unless entitled to terminate this Lease Contract by law or pursuant to its terms, you won't be released from this Lease Contract for any reason—including but not limited to voluntary or involuntary school withdrawal or transfer, voluntary or involuntary job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment, or death.

**24. MILITARY PERSONNEL CLAUSE.** All parties to this Lease Contract agree to comply with any federal law, including, but not limited to the Service Member's Civil Relief Act, or any applicable state law(s), if you are seeking to terminate this Lease Contract and/or subsequent renewals and/or Lease Contract extensions under the rights granted by such laws.

**25. RESIDENT SAFETY AND PROPERTY LOSS.** You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke and carbon monoxide detectors, keyed deadbolt locks, keyless bolting devices, window latches, and other access control devices.

**Smoke and Carbon Monoxide Detectors.** We'll furnish smoke and carbon monoxide detectors only if required by statute, and we'll test them and provide working batteries when you first take possession. After that, you must test the smoke detectors and the carbon monoxide detectors on a regular basis, and pay for and replace batteries as needed, unless the law provides otherwise. You must immediately report smoke and carbon monoxide detector malfunctions to us. Neither you nor others may disable neither the smoke nor the carbon monoxide detectors. If you disable or damage the smoke detector or carbon monoxide detector, or fail to replace a dead battery or report known

smoke and carbon monoxide detector malfunctions to us, and if your action or inaction causes loss, damage, or fines from fire, smoke, or water to us or others, you will be liable for such loss, damage, or fines.

**Casualty Loss.** We're not liable to any resident, guest, or occupant for personal injury or damage or loss of personal property from any cause, including but not limited to: fire, smoke, rain, flood, water and pipe leaks, hail, ice, snow, lightning, wind, explosions, earthquake, interruption of utilities, theft, or vandalism unless otherwise required by law. We are not responsible for the acceptance or receipt of any mail, messages, or packages left at the entrances to the dwelling or elsewhere on the property, or for any loss or damage to those items or any other material that is delivered to the property. We have no duty to remove any ice, sleet, or snow but may remove any amount with or without notice. During freezing weather, you must ensure that the temperature in the Dwelling is sufficient to make sure that the pipes do not freeze (the appropriate temperature will depend upon weather conditions and the size and layout of your unit). If the pipes freeze or any other damage is caused by your failure to properly maintain the heat in your dwelling, you'll be liable for damage to our and other's property. You agree to indemnify and hold us harmless from any claims, loses, or expenses (including attorney's fees) that we may incur as result of your negligence, or the negligence of your guests, invitees, or occupants in the dwelling, such as damage is caused by broken water pipes due to your violating these requirements. If you ask our representatives to perform services not contemplated in this Lease Contract, you will indemnify us and hold us harmless from all liability for those services.

**Crime or Emergency.** Dial 911 or immediately call local medical emergency, fire, or police personnel in case of accident, fire, smoke, or suspected criminal activity or other emergency involving imminent harm. You should then contact our representative. Unless otherwise provided by law, we're not liable to you or any guests or occupants for injury, damage, or loss to person or property caused by criminal conduct of other persons, including theft, burglary, assault, vandalism, or other crimes. If we provide any access control devices or security measures upon the property, they are not a guarantee to prevent crime or to reduce the risk of crime on the property. You agree that no access control or security measures can eliminate all crime and that you will not rely upon any provided access control or security measures as a warranty or guarantee of any kind. We're not responsible for obtaining criminal-history checks on any residents, occupants, guests, or contractors in the Community. If you or any occupant or guest is affected by a crime, you must make a written report to our representative and to the appropriate local law-enforcement agency. You must also furnish us with the law-enforcement agency's incident report number upon request.

**Compliance with Statutory Obligations:** You hereby understand and acknowledge that you have an affirmative duty to comply with the obligations set forth in California Civil Code Section 1941.2:

(1) To keep the dwelling clean and sanitary as the condition of the dwelling permits.
(2) To dispose all rubbish, garbage and other waste, in a clean and sanitary manner.
(3) To properly use and operate all electrical, gas and plumbing fixtures and keep them as clean and sanitary as their condition permits.
(4) Not to permit any person, with his permission, to willfully or wantonly destroy, deface, damage, impair or remove any part of the Community or dwelling unit or the facilities, equipment, or appurtenances thereto, nor himself do any such thing.
(5) To occupy the dwelling as his abode, utilizing portions thereof for living, sleeping, cooking or dining purposes only which were respectively designed or intended to be used for such occupancies.

26. **CONDITION OF THE PREMISES AND ALTERATIONS.** You accept the dwelling, fixtures, and furniture as is, except for conditions causing the premises to be untenantable under California Civil Code 1941. You'll be given an Inventory and Condition form on or before move-in. You must note on the form all defects or damage and return it to our representative. Otherwise, everything will be considered to be in a clean, safe, and good working condition.

You must use customary diligence in maintaining the dwelling and not damaging or littering the Community. Unless authorized by statute or by us in writing, you must not perform any repairs, painting, wallpapering, carpeting, electrical changes, or otherwise alter the dwelling or Community. No holes or stickers are allowed inside or outside the dwelling. But we'll permit a reasonable number of small nail holes for hanging pictures on sheetrock walls and in grooves of wood-paneled walls, unless our rules state otherwise. No water furniture, washing machines, additional phone or TV-cable outlets, alarm systems, or lock changes, additions, or rekeying is permitted unless permission is statutorily required or we've consented in writing. You may install a satellite dish or antenna provided you sign our satellite dish or antenna lease addendum which complies with reasonable restrictions allowed by federal law. You agree not to alter, damage, or remove our property, including alarm systems, smoke and carbon monoxide detectors, furniture, telephone and cable TV wiring, screens, locks, and access control devices. When you move in, we'll supply light bulbs for fixtures we furnish, including exterior fixtures operated from inside the dwelling; after that, you'll replace them at your expense with bulbs of the same type and wattage. Your improvements to the dwelling (whether or not we consent) become ours unless we agree otherwise in writing.

**27. REQUESTS, REPAIRS, AND MALFUNCTIONS.** IF YOU OR ANY OCCUPANT NEEDS TO SEND A NOTICE OR REQUEST—FOR EXAMPLE, FOR REPAIRS, INSTALLATIONS, SERVICES, OR SECURITY-RELATED MATTERS—IT MUST BE SUBMITTED THROUGH EITHER THE ONLINE TENANT/MAINTENANCE PORTAL, OR SIGNED AND IN WRITING AND DELIVERED TO OUR DESIGNATED REPRESENTATIVE. (except in case of fire, smoke, gas, explosion, overflowing sewage, uncontrollable running water, electrical shorts, or crime in progress). Our written notes on your oral request do not constitute a written request from you.

Our complying with or responding to any oral request regarding security or non-security matters doesn't waive the strict requirement for written notices under this Lease Contract. You must promptly notify us in writing of: water leaks; electrical problems; malfunctioning lights; broken or missing locks or latches; and other conditions that pose a hazard to property, health, or safety. We may change or install utility lines or equipment serving the dwelling if the work is done reasonably without substantially increasing your utility costs. We may turn off equipment and interrupt utilities as needed to avoid property damage or to perform work. If utilities malfunction or are damaged by fire, water, or similar cause, you must notify our representative immediately. Air conditioning problems are not emergencies. If air conditioning or other equipment malfunctions, you must notify our representative as soon as possible on a business day. We'll act with customary diligence to make repairs and reconnections. Rent will not abate in whole or in part.

If we believe that fire or catastrophic damage is substantial, or that performance of needed repairs poses a danger to you, we may terminate your tenancy within a reasonable time by giving you written notice. If your tenancy is so terminated, we'll refund prorated rent and all deposits, less lawful deductions.

**28. ANIMALS.** Unless otherwise provided under federal, state, or local law, no animals (including mammals, reptiles, birds, fish, rodents, and insects) are allowed, even temporarily, anywhere in the Dwelling Unit or Community unless you're so authorized in writing. You must remove an illegal or unauthorized animal within 24 hours of notice from us, or you will be considered in default of this Lease Contact. If we allow an animal as a pet, you must execute a separate animal addendum which may require additional deposits, rents, fees or other charges. An animal deposit is considered a general security deposit. We will authorize an assistance animal for a disabled person. When allowed by applicable laws, before we authorize an assistance animal, if the disability is not readily apparent, we may require a written statement from a qualified professional verifying the disability-related need for the assistance animal. If we authorize an assistance animal we may require you to execute a separate animal and/or assistance animal addendum. Animal deposits, additional rents, fees or other charges will not be required for an assistance animal needed due to disability, including an emotional support or service animal, as authorized under federal, state, or local law. If you or any guest or occupant violates the animal restrictions (with or without your knowledge), you'll be subject to charges, damages, eviction, and other remedies provided in this Lease Contract. If an animal has been in the dwelling unit at any time during your term of occupancy (with or without our consent), we'll charge you for any necessary defleaing, deodorizing, and shampooing. You must not feed stray or wild animals.

**29. WHEN WE MAY ENTER.** Landlord will have the right to enter the premises as allowed by law. Law permits entry in case of emergency to make necessary or agreed repairs, decorations, alterations or improvements, supply necessary or agreed services, to test smoke and carbon monoxide detectors, or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workmen or contractors or to make an inspection pursuant to subdivision (f) of Civil Code §1950.5, when the Resident has abandoned or surrendered the premises and pursuant to court order. Landlord will serve Resident with written notice before entry unless:

- Entry is due to an emergency, surrender or abandonment of the unit, or
- Resident and Landlord agree orally to an entry to make agreed repairs or supply agreed services at an approximate day and time within one week of the oral agreement, or
- Resident is present and consents to entry at the time of entry, or
- To exhibit the unit to prospective or actual purchasers of the property, provided that Landlord has notified Resident in writing within 120 days of the oral notice that the property is for sale and that Resident may be contacted to allow for an inspection.
- Entry to inspect a tenant's dwelling unit shall comply with Section 1954. Entry to inspect any unit selected by the pest control operator and to conduct followup inspections of surrounding units until bed bugs are eliminated is a necessary service for the purpose of Section 1954. Tenants shall cooperate with the inspection to facilitate the detection and treatment of bed bugs, including providing requested information that is necessary to facilitate the detection and treatment of bed bugs to the pest control operator.

The landlord shall notify the tenants of those units inspected by the pest control operator pursuant to Section 1954.604 of the pest control operator's findings. The notification shall be in writing and made within two business days of receipt of the pest control operator's findings. For confirmed infestations in common areas, all tenants shall be provided notice of the pest control operator's findings.

**30. JOINT AND SEVERAL RESPONSIBILITY.** Each resident is jointly and severally liable for all Lease Contract obligations. If you or any guest or occupant violates the Lease Contract or rules, all residents are considered to have violated the Lease Contract. Our requests and notices (including sale notices) to any resident constitute notice to all residents and occupants. Notices and requests from any resident or occupant (including notices of lease termination, repair requests, and entry permissions) constitute notice from all residents. Security-deposit refunds and deduction itemizations of multiple residents will comply with paragraph 53 (Deposit Return, Surrender, and Abandonment).

**31. ASSIGNMENT AND SUBLETTING.** You may not assign or sublet any portion or the entire dwelling, except to the extent required by law. We intend this to be a strict and absolute prohibition against subletting and assignment. We will not acknowledge, communicate, or accept rent from any person other than you. All guests, residents, occupants, subtenants, or assignees in the dwelling must comply with every term of this Lease. If you no longer permanently reside in the dwelling, we reserve the right to raise the rent and collect rent from any subsequent occupants. You must notify us in writing if you no longer permanently reside in the dwelling, or if it is no longer your principal place of occupancy. You may still be liable for the entire Lease Contract term if you move out early (see paragraph 48 Move-Out Notice).

---

## Responsibilities of Owner and Resident

**32. DEFAULT BY RESIDENT.** You'll be in default if you or any guest or occupant violates any terms of this Lease Contract including but not limited to the following violations: (1) you don't pay rent or other amounts that you owe when due; (2) you or any guest or occupant violates the Community rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (3) you abandon the dwelling; (4) you give incorrect or false answers in a rental application; (5) you or any occupant is arrested, convicted, or given deferred adjudication for a felony offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (6) any illegal drugs or paraphernalia are found in your dwelling; (7) you or any guest or occupant engages in any of the prohibited conduct described in paragraphs 20 (Limitations on Conduct) or 21 (Prohibited Conduct); or (8) you or any occupant, in bad faith, makes an invalid complaint to an official or employee of a utility company or the government. Any of the above defaults shall be a material breach of the Lease and shall be a just cause to evict you from the dwelling.

**Eviction.** If you default and if we wish to terminate your right of occupancy, we must give you a 3 Court day written notice to cure the default. If the default is incurable (i.e. assigning or subletting or committing waste upon the demised premises, contrary to the conditions or covenants of this Lease, or maintaining, committing, or permitting the maintenance or commission of a nuisance upon the demised premises, or using the premises for an unlawful purpose, or any other incurable default), we may end your right of occupancy by giving you a 3-day notice to vacate. Notice to cure and notice of occupancy termination must be delivered by either: (1) personal delivery to any resident; or (2) personal delivery at the dwelling to any occupant of suitable age and discretion and sending a copy through the regular U.S. mail addressed to the tenant at his or her place of residence; or (3) posting on the outside of the dwelling's front door, accompanied by mailing the notice by regular U.S. mail. Termination of your possession rights or subsequent reletting doesn't release you from liability for future rent or other lease obligations.

**Holdover.** You or any occupant, invitee, or guest must not hold over beyond the date contained in your move-out notice or our notice to vacate (or beyond a different move-out date agreed to by the parties in writing). If a holdover occurs, then: (1) holdover rent is due in advance on a daily basis and may become delinquent without notice or demand; (2) you'll be liable to us for all rent for the full term of the previously signed Lease Contract of a new resident who can't occupy because of holdover (less any mitigation); and (3) at our option, we may extend the lease term—for up to one month from the date of notice of lease extension—by delivering written notice to you or your dwelling while you continue to hold over.

**Other Remedies.** If your rent is delinquent and we give you 3 days' prior written notice, we may report unpaid amounts to consumer reporting agencies. If you default and move out early, you will pay us any amounts stated to be rental discounts in paragraph 10 (Special Provisions), in addition to other sums due. Upon your default, we have all other legal remedies including lease termination, lockout under statute, and the remedy set forth in Civil Code § 1951.2. The prevailing party may recover from a non-prevailing party attorney's fees and any costs of litigation in an amount of no more than $1800. Late charges are liquidated damages for our time, inconvenience, and overhead in collecting late rent (but are not for attorney's fees and litigation costs). All unpaid amounts bear 10% interest per year from due date. To the greatest extent allowed by law, you must pay all collection-agency fees if you fail to pay all sums due within 10 days after we mail you a letter demanding payment and stating that collection agency fees will be added if you don't pay all sums by that deadline. If you fail to fulfill your obligations under

this Lease, we intend to submit a negative report to a consumer reporting agency. The report will summarize your violations and be a possible reflection on your credit record.

**Remedies Cumulative.** Any remedies set forth herein shall be cumulative, in addition to, and not in limitation of, any other remedies available to Landlord under any applicable law.

## General Clauses

**33. ENTIRE AGREEMENT.** Neither we nor any of our representatives have made any oral promises, representations, or agreements. This Lease Contract is the entire agreement between you and us.

**34. NO AUTHORITY TO AMEND UNLESS IN WRITING.** Our representatives (including management personnel, employees, and agents) have no authority to waive, amend, or terminate this Lease Contract or any part of it, unless in writing, and no authority to make promises, representations, or agreements that impose security duties or other obligations on us or our representatives unless in writing.

**35. NO WAIVER.** No action or omission of our representative will be considered a waiver of any subsequent violation, default, or time or place of performance. Our not enforcing or belatedly enforcing written-notice requirements, rental due dates, liens, or other rights isn't a waiver under any circumstances.

**36. NOTICE.** Except when notice or demand is required by statute, you waive any notice and demand for performance from us if you default. Written notice to or from our managers constitutes notice to or from us. Any person giving a notice under this Lease Contract should retain a copy of the memo or letter that was given. Fax signatures are binding. All notices must be signed.

**37. MISCELLANEOUS.**
   A. Exercising one remedy won't constitute an election or waiver of other remedies.
   B. Unless prohibited by law or the respective insurance policies, insurance subrogation is waived by all parties.
   C. All remedies are cumulative.
   D. No employee, agent, or management company is personally liable for any of our contractual, statutory, or other obligations merely by virtue of acting on our behalf.
   E. This Lease Contract binds subsequent owners. Neither an invalid clause nor the omission of initials on any page invalidates this Lease Contract.
   F. All provisions regarding our non-liability and non-duty apply to our employees, agents, and management companies.
   G. This Lease Contract is subordinate or superior to existing and future recorded mortgages or deeds of trust, at our lender's option.
   H. All lease obligations must be performed in the county where the Dwelling is located.
   I. Upon our request, resident shall provide us with a Tenant Estoppel Certificate.
   J. All discretionary rights reserved for us within this Lease Contract or any accompanying addenda are at our sole and absolute discretion.

**38. REGISTERED SEX OFFENDER NOTICE.** Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the Community of residence and ZIP Code in which he or she resides.

**39. PROPOSITION 65 WARNING.** Proposition 65 protects California's drinking water sources from being contaminated with chemicals known to cause cancer, birth defects or other reproductive harm, and requires businesses to inform Californians about exposures to such chemicals. Please see the California Proposition 65 Addendum for warnings and additional information.

**40. NOTICE OF NEGATIVE CREDIT REPORT.** Pursuant to California Civil Code § 1785.26, you are hereby notified that a negative report reflecting on your credit record may be submitted to credit-reporting agencies if you fail to fulfill the terms of your obligation under this Lease Contract.

**41. INDEMNIFICATION.** Subject to applicable law, you shall indemnify and hold the owner, its agents and employees, harmless against all claims, expenses, damages, actions, and liabilities of whatever nature, including reasonable attorney's fees, arising from or relating to injury, loss or damage relating to your, your guest's or occupant's negligence, tenancy and/or your failure to comply with this Lease Contract.

**42. CONTACTING YOU.** By signing this lease, you are agreeing that we, our representative(s) or agent(s) may contact you. You agree that we may contact you using any contact information relating to your lease including any number (i) you have provided to us (ii) from which you called us, or (iii) which we obtained and through which we reasonably believe we can reach you. You agree we may use any means to contact you. This may include calls made to your cellular telephone using an automatic telephone dialing system, artificial or prerecorded voice messages, text messages, mail, e-mail, and calls to your phone or Voice over Internet Protocol (VoIP) service, or any other data or voice transmission technology. You agree to promptly notify us if you change any contact information you provide to us. You are responsible for any service provider charges as a result of us contacting you.

**43. OBLIGATION TO VACATE.** If we provide you with a notice to vacate, or if you provide us with a written notice to vacate or intent to move-out in accordance with paragraph 3 (Lease Term), and we accept such

written notice, then you are required to vacate the dwelling and remove all of your personal property therefrom at the expiration of the Lease term, or by the date set forth in the notice to vacate, whichever date is earlier, without further notice or demand from us.

**44. FORCE MAJEURE.** If we are prevented from completing performances of any obligations hereunder by an act of God, strikes, epidemics, war, acts of terrorism, riots, flood, fire, hurricane, tornado, sabotage, or other occurrence which is beyond the control of the parties, then we shall be excused from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

Furthermore, if such an event damages the property to materially affect its habitability by some or all residents, we reserve the right to vacate any and all leases and you agree to excuse us from any further performance of obligations and undertakings hereunder, to the full extent allowed under applicable law.

**45. POLITICAL SIGNS.** You may post or display political signs relating to an election, legislative vote, initiative, referendum, recall process or issues that are before a public commission, public board or elected local body for a vote as allowed by law. Political signs may be posted in the window or on the door of the dwelling. All political signs must be six square feet or less in size and cannot be posted or displayed in a manner that would violate a local, state or federal law. You must post and remove political signs in compliance with the time limits set by local ordinance. If no local ordinance exists, political signs may be posted no earlier than 90 days prior to the date of the election or vote and must be removed within 15 days of the date of the election or vote.

**46. PAYMENTS.** At our option and without notice, we may apply money received (other than sale proceeds under paragraph 13 (Property Left in Dwelling) or utility payments subject to governmental regulations) first to any of your unpaid obligations, then to current rent—regardless of notations on checks or money orders and regardless of when the obligations arose. All sums other than rent are due upon our demand. After the due date, we do not have to accept the rent or any other payments. We will accept rent payments from a third party, if the third-party signs an acknowledgment stating 1) the third party is not a current tenant of the property and 2) that acceptance does not establish a tenancy.

**47. ASSOCIATION MEMBERSHIP.** We represent that either: (1) we or; (2) the management company that represents us, is at the time of signing this Lease Contract or a renewal of this Lease Contract, a member of both the National Apartment Association and any affiliated state and local dwelling (multi-housing) associations for the area where the dwelling is located.

## When Moving Out

**48. MOVE-OUT NOTICE.** Before moving out, either at the end of the lease term, any extension of the lease term, or prior to the end of the lease term, you must give our representative advance written notice of your intention to vacate as required by the paragraph 3 (Lease Term). The advance notice must be at least the number of days of notice required in paragraph 3 (Lease Terms). The move-out date in your notice *[check one]*: ☐ must be the last day of the month, or ☒ may be the exact day designated in your notice. If neither box is checked, the second checkbox applies. If you move out prior to the end of the lease term, your notice does not act as a release of liability for the full term of the Lease Contract. You will still be liable for the entire Lease Contract term if you move out early under paragraph 23 (Release of Resident), except if you are able to terminate your tenancy under the statutory rights explained under paragraphs 11 (Early Move-Out), 23 (Release of Resident), or under other laws providing a right to terminate this Lease Contract. All notices to vacate must be in writing and must provide the date by which you intend to vacate. If the notice does not comply with the time requirements of the Lease Terms paragraph, even if you move by the last date in the lease term, you will be responsible for an additional month's rent.

If you fail to vacate by the date set forth in your notice, you will automatically and immediately become a holdover tenant pursuant to state law, and we will have all remedies available under this Lease Contract and state law.

**49. MOVE-OUT PROCEDURES.** The move-out date can't be changed unless we and you both agree in writing. You won't move out before the lease term or renewal period ends unless all rent for the entire lease term or renewal period is paid in full. Early move-out may result in reletting charges and liability for future rent under paragraphs 11 (Early Move-Out) and 32 (Default by Resident). You're prohibited by law from applying any security deposit to rent. You won't stay beyond the date you are supposed to move out. You must give us and the U.S. Postal Service, in writing, each resident's forwarding address.

**50. CLEANING.** You must thoroughly clean the dwelling, including doors, windows, furniture, bathrooms, kitchen appliances, patios, balconies, garages, carports, and storage rooms. You must follow move-out cleaning instructions if they have been provided. If you don't clean adequately, you'll be liable for reasonable cleaning charges.

**51. MOVE-OUT INSPECTION.** California law provides that you have a right to a pre-move-out inspection and we will give notice of such right. Our representative has no authority to bind or limit us regarding deductions for repairs, damages, or charges. Any statements or estimates by us or our representative are subject to our correction, modification, or disapproval before final refunding or accounting.

**52. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES.** You may not use the security deposit to pay any month's rent. We may withhold from the security deposit only such amounts as are reasonably necessary to remedy your defaults including, but not limited to, the following:

a) Defaults in the payment of rent;

b) To repair damage to the premises caused by you, exclusive of ordinary wear and tear, and/or:

c) To clean the premises, if necessary, upon termination of the tenancy in order to return the unit to the same level of cleanliness it was in at the inception of the tenancy, and /or;

d) To restore, replace, or return personal property or appurtenances, exclusive of ordinary wear and tear.

**53. DEPOSIT RETURN, SURRENDER, AND ABANDONMENT.** You are required to provide us written notice of your forwarding address, on or before termination of this Lease Contract. We'll mail you, to the forwarding address you provide, your security deposit refund (less lawful deductions) and an itemized accounting of any deductions within 21 days after surrender or abandonment, unless statutes provide otherwise. If you fail to provide us with your forwarding address in writing, as required above, we will process the unclaimed security deposit in accordance with state law.

**Surrender.** You have surrendered the dwelling when: (1) the move-out date has passed and no one is living in the dwelling in our reasonable judgment; (2) all dwelling keys and access devices listed in paragraph 5 (Keys) have been turned in where rent is paid—whichever date occurs first, or (3) we reasonably believe that you have surrendered the dwelling to us.

**Abandonment.** You have abandoned the dwelling when we reasonably believe you have abandoned it. California law provides that abandonment will be found when all of the following have occurred: (1) your rent has been due and unpaid for at least 14 days; (2) we give you written notice of such belief and our intent to terminate the lease because of your delinquency; (3) our notice of abandonment follows substantially the form in California Code Section 1951.3(d); (4) such notice is given by (i) personal delivery to you, or (ii) first class mail, postage prepaid to your last known address; (5) the lease termination date in that notice is at least 15 days after personal delivery or 18 days after mailing; and (6) such 15 or 18 day notice period has expired without response from you as per California Code Section 1951.3. If we have reason to believe you won't receive the notice at your last known address, we will, at the same time we mail the above notice to your last known address, mail a copy to any other addresses that are known to us where you could reasonably be expected to receive the notice.

Surrender, abandonment, and judicial eviction end your right of possession for all purposes and gives us the immediate right to: clean up, make repairs in, and relet the dwelling; determine any security deposit deductions; and remove property left in the dwelling. Surrender, abandonment, and judicial eviction affect your rights to property left in the dwelling (paragraph 13 (Property Left In Dwelling)), but do not affect our mitigation obligations (paragraph 32 (Default by Resident)).

## Severability, Originals and Attachments, and Signatures

**54. SEVERABILITY.** If any provision of this Lease Contract is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Lease Contract. The court shall interpret the lease and provisions herein in a manner such as to uphold the valid portions of this Lease Contract while preserving the intent of the parties.

**55. ORIGINALS AND ATTACHMENTS.** This Lease Contract has been executed in multiple originals, with original signatures. We will provide you with a copy of the Lease Contract. Your copy of the Lease Contract may be in paper format, in an electronic format at your request, or sent via e-mail if we have communicated by e-mail about this Lease. Our rules and community policies, if any, will be attached to the Lease Contract and provided to you at signing. When an Inventory and Condition form is completed, you should retain a copy, and we should retain a copy. Any addenda or amendments you sign as a part of executing this Lease Contract are binding and hereby incorporated into and made part of the Lease Contract between you and us. This lease is the entire agreement between you and us. You acknowledge that you are NOT relying on any oral representations. A copy or scan of this Lease Contract and related addenda, amendments, and agreements may be used for any purpose and shall be treated as an original.

> You are legally bound by this document.
> Read it carefully before signing.

**Name and address of locator service** *(if applicable)*

_____
_____
_____
_____

**Date form is filled out** *(same as on top of page 1)*
<u>09/29/2023</u>

**(Required by Cal. Civil Code Section 1962)**

**Name, address and telephone number of Owner or Owner's Agent:**

Avenue5 California Inc

215 W. 6th Street

Los Angeles, CA 90014

(213) 395-0201

**Name, address and telephone number of person or entity to whom payments must be made:**

Randolph Lofts

215 W. 6th Street

Los Angeles, CA 90014

(213) 395-0201

Acceptable forms of payment:

Certfied Funds, C.C. (online only)

Rent Payments may be made personally ☒ Yes ☐ No

If yes, the person authorized to accept payments will be available

Monday through Friday 9AM - 6PM

(usual days and hours authorized person will be available to accept payment).

**THIS LEASE CONTRACT WILL AUTOMATICALLY CONTINUE AS A TENANCY FROM MONTH TO MONTH AT THE EXPIRATION OF THE INITIAL LEASE TERM UNLESS (1) PROPER MOVE-OUT OR VACATE NOTICE IS GIVEN UNDER PARAGRAPH 48 (MOVE-OUT NOTICE), OR (2) YOU AND WE AGREE OTHERWISE IN WRITING.**

**Resident or Residents** *(all sign below)*

*Amanda Jolicoeur-Louis*

**Owner or Owner's Representative**

*(signing as agent for and on behalf of Owner)*

**Address and phone number of owner's representative for notice purposes**

215 W. 6th Street

Los Angeles, CA 90014

(213) 395-0201

**SPECIAL PROVISIONS** *(CONTINUED FROM PARAGRAPH 10)* Cash payments will not be accepted. Rent is considered late after the close of business on the 5th of each month. All late payments will be subject to late fees defined herein in this lease contract under section 6. In the event the owner must serve the resident(s) any legal notice for any breach of this lease agreement, the resident shall be charged a legal notice preparation fee of $35 or more per occurrence. The service fee shall be payable as additional rent with any other monies owed within the time frame specified on the current notice that was served or the resident will be considered in default of the lease contract and the owner shall proceed with legal action.

## UTILITY AND SERVICES ADDENDUM

This Utility Addendum is incorporated into the Lease Contract (referred to in this addendum as "Lease Contract" or "Lease") dated _____**September 29, 2023**_____ between **Randolph Lofts** _____

_____

_____

("We" and/or "we" and/or "us") and **Amanda Jolicoeur - Louis** _____

_____

_____

_____

_____

_____

("You" and/or "you") of Unit No. _____**MH0806**_____ located at **215 W. 6th Street** _____

*(street address)* in **Los Angeles, CA 90014** _____

and is in addition to all terms and conditions in the Lease. This Addendum constitutes an Addendum to the above described Lease Contract for the above described premises, and is hereby incorporated into and made a part of such Lease Contract. Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Contract, this Addendum shall control.

1. Responsibility for payment of utilities, and the method of metering or otherwise measuring the cost of the utility, will be as indicated below.

   a) **Water** service to your dwelling will be paid by you either:
      - ❑ directly to the utility service provider; or
      - ☒ water bills will be billed by the service provider to us and then allocated to you based on the following formula: **6**_____
         - ❑ If flat rate is selected, the current flat rate is $ _____ per month.
         - ☒ 3rd party billing company if applicable **Conserve** _____

   ***Submetered Water does not apply under this Addendum. Please refer to the Water Submeter Lease Addendum and Water Service Law Additional Information Form for submetered water. The Water Submeter Lease Addendum applies: (1) if your dwelling has a water submeter installed on or after January 1, 2018, and was required to be installed pursuant to a building standard adopted in accordance with Health and Safety Code Section 17922.14, and not exempted per Civil Code 1954.216, or (2) to all dwelling units where submeters are used to charge a tenant separately for water service.

   b) **Sewer** service to your dwelling will be paid by you either:
      - ❑ directly to the utility service provider; or
      - ☒ sewer bills will be billed by the service provider to us and then allocated to you based on the following formula: **6**_____
         - ❑ If flat rate is selected, the current flat rate is $_____ per month.
         - ❑ 3rd party billing company if applicable **Conserve** _____

   c) **Gas** service to your dwelling will be paid by you either:
      - ❑ directly to the utility service provider; or
      - ❑ gas bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
         - ❑ If flat rate is selected, the current flat rate is $_____ per month.
         - ❑ 3rd party billing company if applicable _____

   d) **Trash** service to your dwelling will be paid by you either:
      - ❑ directly to the service provider; or
      - ☒ trash bills will be billed by the service provider to us and then charged to you based on the following formula: **6**_____
         - ❑ If flat rate is selected, the current flat rate is $_____ per month.
         - ☒ 3rd party billing company if applicable **Conserve** _____

e) **Electric** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☒ electric bills will be billed by the service provider to us and then allocated to you based on the following formula: **7**
  - ☐ If flat rate is selected, the current flat rate is $_____ per month.
  - ☒ 3rd party billing company if applicable **Conserve**
  - _____

f) **Stormwater** service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☐ stormwater bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
  - ☐ If flat rate is selected, the current flat rate is $_____ per month.
  - ☐ 3rd party billing company if applicable _____
  - _____

g) **Cable TV** service to your dwelling will be paid by you either:
- ☒ directly to the utility service provider; or
- ☐ cable TV bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
  - ☐ If flat rate is selected, the flat rate is $_____ per month.
  - ☐ 3rd party billing company if applicable _____
  - _____

h) **Master Antenna** service to your dwelling will be paid by you either:
- ☒ directly to the utility service provider; or
- ☐ master antenna bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
  - ☐ If flat rate is selected, the current flat rate is $_____ per month.
  - ☐ 3rd party billing company if applicable _____
  - _____

i) **Internet** service to your dwelling will be paid by you either:
- ☒ directly to the utility service provider; or
- ☐ internet bills will be billed by the service provider to us and then allocated to you based on the following formula: _____
  - ☐ If flat rate is selected, the current flat rate is $_____ per month.
  - ☐ 3rd party billing company if applicable _____
  - _____

j) (Other) **Pest Control**_____ service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☒ bills will be billed by the service provider to us and then allocated to you based on the following formula: **4**
  - ☒ If flat rate is selected, the current flat rate is $____**5.00**____ per month.
  - ☒ 3rd party billing company if applicable **Conserve**
  - _____

k) (Other) **HVAC**_____ service to your dwelling will be paid by you either:
- ☐ directly to the utility service provider; or
- ☒ bills will be billed by the service provider to us and then allocated to you based on the following formula: **6**
  - ☐ If flat rate is selected, the current flat rate is $_____ per month.
  - ☒ 3rd party billing company if applicable **Conserve**
  - _____

METERING/ALLOCATION METHOD KEY

"1" - Sub-metering of all of your water/gas/electric use

"2" - Calculation of your total water use based on sub-metering of hot water

"3" - Calculation of your total water use based on sub-metering of cold water

"4" - Flat rate per month

"5" - Allocation based on the number of persons residing in your dwelling unit

"6" - Allocation based on the number of persons residing in your dwelling unit using a ratio occupancy formula

"7" - Allocation based on square footage of your dwelling unit

"8" - Allocation based on a combination of square footage of your dwelling unit and the number of persons residing in your dwelling unit

"9" - Allocation based on the number of bedrooms in your dwelling unit

"10" - Allocation based on a lawful formula not listed here

   (Note: if method "10" is selected, a separate sheet will be attached describing the formula used)

2. Allocation formulas are used when the dwelling unit has no sub-meter. The formula may be based on factors such as, the interior square footage of the dwelling unit, number of bedrooms, number of occupants, number of bathrooms, presence of washing machine, and average water usage for that floor plan. The allocation is an estimate of usage by the resident. If an allocation method is used, we or our billing company will calculate your allocated share of the utilities and services provided and all costs in accordance with state and local statutes. Under any allocation method, Resident may be paying for part of the utility usage in common areas or in other residential units as well as administrative fees. Both Resident and Owner agree that using a calculation or allocation formula as a basis for estimating total utility consumption is fair and reasonable, while recognizing that the allocation method may or may not accurately reflect actual total utility consumption for Resident. Where lawful, we may change the above methods of determining your allocated share of utilities and services and all other billing methods, in our sole discretion, and after providing written notice to you. More detailed descriptions of billing methods, calculations and allocation formulas will be provided upon request.

If a flat fee method for trash or other utility service is used, Resident and Owner agree that the charges indicated in this Agreement (as may be amended with written notice as specified above) represent a fair and reasonable amount for the service(s) provided and that the amount billed is not based on a monthly per unit cost.

3. When billed by us directly or through our billing company, you must pay utility bills within ____5____ days of the date when the utility bill is issued at the place indicated on your bill, or the payment will be late. If a payment is late, you will be responsible for a late fee as indicated below. The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and we will exercise all remedies available under the Lease, up to and including eviction for nonpayment. To the extent there are any new account, monthly administrative, late or final bill fees, you shall pay such fees as indicated below.

| | | |
|---|---|---|
| New Account Fee: | $_____ | (not to exceed $_____) |
| Monthly Administrative Billing Fee: | $_____6.00_____ | (not to exceed $_____) |
| Late Fee: | $_____ | (not to exceed $_____) |
| Final Bill Fee: | $____15.00____ | (not to exceed $_____) |

If allowed by state law, we at our sole discretion may amend these fees, with written notice to you.

4. You will be charged for the full period of time that you were living in, occupying, or responsible for payment of rent or utility charges on the dwelling. If you breach the Lease, you will be responsible for utility charges for the time period you were obliged to pay the charges under the Lease, subject to our mitigation of damages. In the event you fail to timely establish utility services, we may charge you for any utility service billed to us for your dwelling and may charge a reasonable administration fee for billing for the utility service in the amount of $____50.00____.

5. When you move out, you will receive a final bill which may be estimated based on your prior utility usage. This bill must be paid at the time you move out or it will be deducted from the security deposit.

6. We are not liable for any losses or damages you incur as a result of outages, interruptions, or fluctuations in utility services provided to the dwelling unless such loss or damage was the direct result of negligence by us or our employees. You release us from any and all such claims and waive any claims for offset or reduction of rent or diminished rental value of the dwelling due to such outages, interruptions, or fluctuations.

7. You agree not to tamper with, adjust, or disconnect any utility sub-metering system or device. Violation of this provision is a material breach of your Lease and may subject you to eviction or other remedies available to us under your Lease, this Utility Addendum and at law.

8. Where lawful, all utilities, charges and fees of any kind under this lease shall be considered additional rent, and if partial payments are accepted by the Owner, they will be allocated first to non-rent charges and to rent last.

9. You represent that all occupants that will be residing in the Unit are accurately identified in the Lease. You agree to promptly notify Owner of any change in such number of occupants.

10. You agree that you may, upon thirty (30) days prior written notice from Owner to you, begin receiving a bill for additional utilities and services, at which time such additional utilities and services shall for all purposes be included in the term Utilities.

11. This Addendum is designed for use in multiple jurisdictions, and no billing method, charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful. If any provision of this addendum or the Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this addendum or the Lease. Except as specifically stated herein, all other terms and conditions of the Lease shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control.

12. The following special provisions and any addenda or written rules furnished to you at or before signing will become a part of this Utility Addendum and will supersede any conflicting provisions of this printed Utility Addendum and/or the Lease Contract.

**Billed trash expense may include, but is not limited to, actual trash invoices, internal trash-related expense, junk/bulky item pick up, porter service, consulting/management expense, equipment rental, repair and maintenance, trash management costs, trash-related cleaning costs, odor control, trash auditing costs, and recycling charges.**

Resident Signature _Amanda Jolicoeur-Louis_____ Date _____09/29/2023_____

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Resident Signature _____ Date _____

Management _____ Date _____

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Kenneth Townsend, Esq. (SBN 183591); Daniel O'Leary, Esq. (SBN 175128)<br>1001 Gayley Avenue Suite 105 #24514<br>TELEPHONE NO.: 310-997-0386   FAX NO.: 888-895-2202<br>EMAIL ADDRESS: townsend1994@lawnet.ucla.edu / dan@danolearylaw.com<br>ATTORNEY FOR *(Name)*: Amanda Jolicoeur-Louis and Class Members | Electronically FILED by<br>Superior Court of California,<br>County of Los Angeles<br>3/15/2024 2:08 PM<br>David W. Slayton,<br>Executive Officer/Clerk of Court,<br>By J. Covarrubias, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME: AMANDA JOLICOEUR-LOUIS, et al. v. CONSERVICE LLC

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [X] Unlimited   [ ] Limited<br>(Amount demanded exceeds $35,000)   (Amount demanded is $35,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 24STCV06518 |
| | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [X] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [X] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [X] Substantial amount of documentary evidence
   d. [X] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [X] monetary   b. [X] nonmonetary; declaratory or injunctive relief   c. [X] punitive
4. Number of causes of action *(specify)*:
5. This case [X] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 14, 2024

Kenneth Townsend
_____
(TYPE OR PRINT NAME)

▶ Kenneth Townsend   Digitally signed by Kenneth Townsend Date: 2024.03.14 15:53:29 -07'00'
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner
        Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic
        relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**          Print this form          Save this form          Clear this form

| SHORT TITLE | CASE NUMBER |
|---|---|
| AMANDA JOLICOEUR-LOUIS v. CONSERVICE, LLC | 24STCV06518 |

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.   Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.   Location where petitioner resides. |
| 2.   Permissive filing in Central District. | 8.   Location wherein defendant/respondent functions wholly. |
| 3.   Location where cause of action arose. | 9.   Location where one or more of the parties reside. |
| 4.   Location where bodily injury, death or damage occurred. | 10.   Location of Labor Commissioner Office. |
| 5.   Location where performance required, or defendant resides. | 11.   Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.   Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| AMANDA JOLICOEUR-LOUIS v. CONSERVICE, LLC | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| AMANDA JOLICOEUR-LOUIS v. CONSERVICE, LLC | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>                    Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

LASC CIV 109 Rev. 01/23

For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| AMANDA JOLICOEUR-LOUIS v. CONSERVICE, LLC | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| AMANDA JOLICOEUR-LOUIS v. CONSERVICE, LLC | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | ADDRESS:<br>215 W. 6th Street # MH0806 | | |
|---|---|---|---|
| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90014 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _____ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: __03/14/2024_____                _____
                                                                                (SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.



# Superior Court of California, County of Los Angeles

---

## ALTERNATIVE DISPUTE RESOLUTION (ADR)
## INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

### What is ADR?
ADR helps people find solutions to their legal disputes without going to trial.  The main types of ADR are negotiation, mediation, arbitration, and settlement conferences.  When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR).  These alternatives to litigation and trial are described below.

### Advantages of ADR
- **Saves Time:**  ADR is faster than going to trial.
- **Saves Money:**  Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties):  Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:**  ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR
- **Costs:**  If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:**  ADR does not provide a public trial or decision by a judge or jury.

### Main Types of ADR
1. **Negotiation:**  Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial.  If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:**  In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome.  Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

**How to Arrange Mediation in Los Angeles County**

Mediation for **civil cases** is voluntary and parties may select any mediator they wish.  Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

   **These organizations cannot accept every case and they may decline cases at their discretion.**
   They may offer online mediation by video conference for cases they accept.  Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

   **NOTE:  The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs.**  Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases.
   https://dcba.lacounty.gov/countywidedrp/

   **Online Dispute Resolution (ODR).**  Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.  https://my.lacourt.org/odr/

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:**  Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome.  In "binding" arbitration, the arbitrator's decision is final; there is no right to trial.  In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision.  For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):**  MSCs are ordered by the Court and are often held close to the trial date or on the day of trial.  The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website:  https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

| SHORT TITLE | CASE NUMBER |
|---|---|
| AMANDA JOLICOEUR-LOUIS v. CONSERVICE, LLC | 24STCV06518 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1. Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7. Location where petitioner resides. |
| 2. Permissive filing in Central District. | 8. Location wherein defendant/respondent functions wholly. |
| 3. Location where cause of action arose. | 9. Location where one or more of the parties reside. |
| 4. Location where bodily injury, death or damage occurred. | 10. Location of Labor Commissioner Office. |
| 5. Location where performance required, or defendant resides. | 11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6. Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| AMANDA JOLICOEUR-LOUIS v. CONSERVICE, LLC | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| AMANDA JOLICOEUR-LOUIS v. CONSERVICE, LLC | |

| | **A** Civil Case Cover Sheet Case Type | **B** Type of Action (check only one) | **C** Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation                    Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| | SHORT TITLE | CASE NUMBER |
|---|---|---|
| | AMANDA JOLICOEUR-LOUIS v. CONSERVICE, LLC | |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation (Continued)** | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| AMANDA JOLICOEUR-LOUIS v. CONSERVICE, LLC | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON: | | | ADDRESS: |
|---|---|---|---|
| ☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11 | | | 215 W. 6th Street # MH0806 |
| CITY: | STATE: | ZIP CODE: | |
| Los Angeles | CA | 90014 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _____ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: 03/14/2024 _____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

| **SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>03/15/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: _____ J. Covarrubias _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>24STCV06518 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | David S. Cunningham III | 11 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on 03/15/2024
   (Date)

David W. Slayton, Executive Officer / Clerk of Court

By J. Covarrubias_____, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

LACIV 190 (Rev 6/18)
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
CONSERVICE, LLC, a Utah limited liability company

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**Electronically FILED by
Superior Court of California,
County of Los Angeles
3/18/2024 3:59 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Trinh, Deputy Clerk**

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
AMANDA JOLICOEUR-LOUIS, an individual, and on behalf of
all others similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Stanley Mosk Courthouse<br>111 N. Hill Street, Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>24STCV06518 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kenneth Townsend, Esq. (SBN 183591)            310-997-0386 ph.  888-895-2202 fx.
Daniel O'Leary, Esq. (SBN 175128)
1001 Gayley Avenue Suite 105 #24514
Los Angeles, CA 90024

| DATE: 03/18/2024 | Clerk, by | S. Trinh | , Deputy |
|---|---|---|---|
| *(Fecha)*   David W. Slayton, Executive Officer/Clerk of Court | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*:   CONSERVICE, LLC, a Utah limited liability company

   under:  ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
         ☒ other *(specify)*:LLC

4. ☐ by personal delivery on *(date)*:

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465