1   Kenneth Townsend, Esq., SBN 183591
2   townsend1994@lawnet.ucla.edu
    **THE LAW OFFICES OF KENNETH TOWNSEND**
3   1001 Gayley Avenue, Suite 105 #24514
    Los Angeles, CA 90024
    Telephone:   (310) 997-0386
4
5   Daniel O'Leary, Esq. SBN 175128
    dan@danolearylaw.com
6   **LAW OFFICE OF DANIEL M. O'LEARY**
    2300 Westwood Boulevard, Suite105
7   Los Angeles, CA 90064
    Telephone: (310) 481-2020
8
    Attorneys for Plaintiff
9   AMANDA JOLICOEUR-LOUIS

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12                   **WESTERN DIVISION**

13  AMANDA JOLICOEUR-LOUIS, an            Case No.: 2:24-cv-03253-HDV-BFM
    individual, and SOPHIE PHILIPS, an
14  individual, on behalf of all others    **SECOND AMENDED**
    similarly situated,                    **COMPLAINT FOR:**
15
16               Plaintiffs,                 **(1) Violation of Rosenthal Act**
                                                 **(Civil Code §1788 et seq.);**
17          vs.                             **(2) Violation of The California**
                                                 **Unfair Practices Act § 17200**
18                                               **et seq.;**
    CONSERVICE, LLC, a Utah limited        **(3) Violation of The California**
19  liability company,                          **False Advertising Act § 17500**
                                                 **et seq.; and**
20               Defendant.                 **(4)  Declaratory Relief (28 U.S.C.**
21                                               **§ 2201)**
22
23                                          **CLASS ACTION COMPLAINT**
24                                          **AND DEMAND FOR JURY**
                                            **TRIAL**
25
26
27
28

                          1

**NATURE OF ACTION**

1.      Conservice, LLC ("Conservice") is a Utah-based utility billing and management company that assists third-party landlords in collecting utility charges (e.g., sewage, water, trash removal, etc.) via their website, app ("MyCUC"), and ebills. Conservice contracts directly with landlords to provide billing services for them. Conservice then bills tenants every month and also sends collection and dunning letters to tenants. As stated on their website, Conservice "ensures that residents are billed promptly and accurately for their utility expenses."[1] Conservice earns exorbitant fees, as high as $10.00, designated as a "service fee" or "rent collection fee, for, as Conservice admits: "help[ing]with the costs of operating facilities such as our Customer Service center and website so you can make an instant, one-time payment." Across California, the largest rental market in the US, with an estimated 14 million renters,[2] tenants are directed to Conservice's website by their landlords, or solicited directly through Conservice, to pay their utility bill online. This was especially true during the pandemic when social distancing was being enforced. Consequently, during the height of COVID-19, when many residents faced insurmountable difficulties paying their rent and eviction moratoriums were in place, Conservice was charging tenants illegal pay-to-pay fees just to pay their utility bills. These fees were not authorized by law, and in fact, Civil Code § 1788.14 expressly prohibits "[c]ollecting…from the debtor the whole or any part of the debt collector's fee or charge for services rendered." Conservice also failed to identify itself as a debt collector to consumer, depriving them of notice their mini-Miranda rights under the Rosenthal Act to dispute their bills.

Further, Conservice is **not** a licensed debt collector per Financial Code § 100001 of the Debt Collection Licensing Act, which prohibits unlicensed debt collection within the

---

[1] Conservice website: https://www.conservice.com/solutions/expense-recovery/ (last visited February 6, 2024).

[2] NY Times Conor Dougherty, "Does Your Representative Also Pay Rent?" July 23, 2023. *See also*, US Census Data https://data.census.gov/table/ACSST1Y2022.S2504?q=Owner/Renter+(Householder)+Characteristics&t=Owner/Renter+(Tenure)&g=040XX00US06 (last visited Nov. 2, 2023.)

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

state. As such, Conservice's activity is illegal under Financial Code § 100001 et seq., the Rosenthal Debt Collection Practices Act ("Rosenthal Act"), Cal. Civ. Code § 1788, *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*. and False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.

Plaintiff Amanda Jolicoeur-Louis ("Louis") is a tenant in Randolph Lofts, and Sophie Philips ("Philips") is a tenant in at the Lido, both apartment buildings that contract with Conservice. Plaintiffs were subjected to the fees mentioned above. As such, Plaintiffs bring this Class Action Complaint against Defendant Conservice to obtain redress for all California tenants who have used the Conservice app or website (or been ebilled) and who have been illegally charged Defendant's service fees while they were unlicensed. Plaintiffs allege as follows as to themselves, upon personal knowledge and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys:

## PARTIES

2.    Plaintiff Louis is a natural person and citizen of the State of California and is a resident at the Randolph Lofts located at 215 W. 6th Street # MH0806, Los Angeles, CA 90014 in the County of Los Angeles at all relevant times herein.

3.    Plaintiff Philips is a natural person and citizen of the State of California and is a resident of the Lido located at 6500 Yucca St., Hollywood, CA 90028 in the County of Los Angeles at all relevant times herein.

4.    Defendant Conservice is a Utah limited liability company with its headquarters and principal place of business at 750 South Gate Drive, River Heights, Utah 84341. Conservice also has an office in California at 4 Executive Cir Ste 250 Irvine, CA 92614.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over Plaintiffs various claims for relief for pursuant to 28 U.S.C. § 1332(d)(2). Pursuant to CAFA, federal courts have original jurisdiction over class actions where: (1) the putative class consists of at least 100

1  members (28 U.S.C. § 1332(d)(5)(B)); (2) there is minimal diversity between the parties
2  (28 U.S.C. § 1332(d)(2)(A)); and (3) the aggregate classwide amount in controversy
3  exceeds $5,000,000, exclusive of interest and costs (28 U.S.C. § 1332(d)(2), (6)). All of
4  these factors are alleged in Plaintiffs' complaint.

5        6.    This Court has personal jurisdiction over Defendants because Defendants
6  have: (a) conducted substantial business in the State of California and this District by
7  advertising, targeting, offering, selling, and providing their goods/services to residents of
8  this District; (b) derived financial benefits from residents of the State of California by
9  doing so; (c) purposefully availed themselves of the privilege of conducting business
10 within the State of California; and (d) sought the protection and benefits of the laws of the
11 State of California

12       7.    Venue in this Court exists under 28 U.S.C. § 1391(b)(2), inasmuch as a
13 substantial part of the events or omissions giving rise to the various causes of action
14 alleged herein and giving rise to Plaintiffs' claims occurred within this District.

15                          **FACTUAL ALLEGATIONS**

16       8.    On or about September 29, 2023, Plaintiff Louis entered into a lease
17 agreement to live at the Randolph Lofts, located at 215 W. 6th Street, Los Angeles,
18 Apartment Number MH0806. She entered a fixed-term lease that extends from September
19 2023 until September 2024 ("Randolph Lease Agreement"). Attached hereto as **Exhibit
20 A** is true and correct copy of Plaintiff Louis's Lease Agreement, including the Utility and
21 Services Addendum.

22       9.    On or about June 22, 2023, Plaintiff Philips entered into a lease agreement to
23 live at the Lido, located at 6500 Yucca St., Hollywood, Apartment 118. Philips entered
24 into a fixed-term lease agreement that extends from June 28, 2023, to June 27, 2024 ("Lido
25 Lease Agreement"). Attached hereto as **Exhibit B** is true and correct copy of the Lido
26 Lease Agreement, including the Utility and Services Addendum.

27       10.   At Paragraph 6, the Lease Agreement directs Plaintiff to pay her rent either
28 on-site or through "WIPS," which is Yardi System, Inc.'s online payment system that is

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

separate from and has nothing to do with Defendant. However, pursuant to Paragraph 1 of the **Utility and Services Addendum** ("Utilities Addendum"), Plaintiff was directed to pay her utilities –water, sewer, trash, electricity, and pest control – through Conservice. The Utilities Addendum also specified that Conservice might charge an administrative fee of up to $6.00 per month, in contravention of California law per Civil Code § 1788.14(b). The Utilities Addendum states in Paragraph 11 that, "This Addendum is designed for use in multiple jurisdictions, and no…**charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful**."

11.    On page 50 of Plaintiff Philips' lease agreement, in the section entitled "Utilities Addendum," it specifies in Paragraph 4 that there is no billing entity. Further, in Paragraphs 5-6, it states that "$0.00" will be paid for late fees or service charges pursuant to Philips payment of her utilities, in contrast to Louis's lease agreement.

12.    Consistent with the typical arrangement for utilities, each monthly bill sent to Plaintiffs by Conservice was for past service (e.g., June bill was for electricity generated in May). Or, as Conservice states in its FAQ section of its website, "Utilities are most commonly billed in arrears, which means you will see charges for previous months on your Conservice bill. This is because utilities can't be billed until they have been used..." Given this structure, the Conservice arrangement embodied a transaction in which services were acquired on credit primarily for personal, family, or household purposes—*i.e.*, a consumer credit transaction per Civil Code § 1788.2(e).

13.    Plaintiff Louis received emails each month from Conservice specifying the amount of her utility charges and assessing an illegal fee of approximately $3.99. Plaintiff Philips received emails each month from Conservice specifying the amount of her utility charges and assessing an illegal fee of approximately $3.25. Next to this fee, in both instances, it specifies that "Conservice is a service provider contracted to prepare monthly statements and provide residents with conservation resources." Additionally, both Plaintiffs frequently used the Conservice website and ebills to review and evaluate their utility bills during their tenancies. Each time Plaintiff made payments of her utilities and

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

associated charges, Conservice imposed, and Plaintiff paid, an additional service fee in violation of Business and Professions Code §17200 in the case of Louis, and Civil Code § 1788.14(b) and §17200 in the case of Philips.

14. For example, on October 28, 2023, Louis was billed $18.65 for her utilities, including electricity, pest control, trash, and water, for the period from September 30 through October 1, 2023 (Plaintiff's lease had just started and these were pro-rated charges). Included in this bill was a service fee of $3.99, **over 20% of her total utilities for the period**, deceptively designated as a "Rent Service Fee." Plaintiff paid this bill, including the service fee, on November 14, 2023, after its due date of October 28th. However, Plaintiff paid her rent through the Randolph Lofts/RentCafe website pursuant to Paragraph 6 of her lease. (Randolph Lofts used Yardi System's RentCafe.com website to process rent payments online, *and Yardi charges its own convenience fees to collect rent via its online portal*.) Conservice's service fee, on the other hand, has nothing to do with rent collection. The fee is misleadingly given this title to disguise the fact that it is an illegal pay-to-pay fee and to induce Plaintiff to pay it out of fear of eviction. As specified in the "Help" section of Conservice's website, "The convenience fee helps with the costs of operating facilities such as our …website so you can make an instant, one-time payment."

15. As another example, on November 30, 2023, Louis was billed $256.50 for her utilities, including electricity, pest control, trash, and water for the period from October 1 through November 1, 2023. Included in this bill was a service fee of $3.99, deceptively designated as a "Rent Service Fee." Plaintiff paid this bill, including the service fee, on December 5, 2023, after its due date of December 1st. However, Plaintiff paid her rent through the Randolph Lofts/RentCafe website pursuant to Paragraph 6 of her lease. (Randolph Lofts used Yardi System's RentCafe.com website to process rent payments online, *and Yardi charges its own convenience fees to collect rent via its online portal*.) Conservice's service fee, on the other hand, has nothing to do with rent collection. The fee is misleadingly given this title to disguise the fact that it is an illegal pay-to-pay fee

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

and to induce Plaintiff to pay it out of fear of eviction. As specified in the "Help" section of Conservice's website, "The convenience fee helps with the costs of operating facilities such as our …website so you can make an instant, one-time payment."

16.    On April 27, 2024, Philips was billed $266.50 for her utilities, including water heating, sewer, trash, and water for the period from March 1 through March 31, 2024. Included in this bill was a service fee of $3.25, deceptively designated as a "Trash Admin Fee." Next to the fee it states "Conservice is a service provider contracted to prepare monthly statements and provide residents with conservation resources." Plaintiff paid this bill, including the service fee, on September 13, 2024, after its due date of May 1, 2024. As specified in the "Help" section of Conservice's website, "The convenience fee helps with the costs of operating facilities such as our …website so you can make an instant, one-time payment." Plaintiff Philips continues to reside at the Lido, where Conservice remains the utility billing provider. As a result, she continues to receive bills from Conservice and faces ongoing exposure to the same billing practices challenged in this Complaint.

***Defendant Was Collecting Debt Without a License***

17.    The Debt Collection Licensing Act ("DCLA") prohibits unlicensed debt collection within California per Financial Code § 100001, which states: "No person shall engage in the business of debt collection in this state without first obtaining a license pursuant to this division." This statute became effective January 1, 2022.

18.    Financial Code § 10000.5 provided a safe harbor provision for any debt collector that submitted an application for a license *prior to* January 1, 2023. However, Conservice did not apply for a license in California during this period and does **not** currently have a pending application, as shown on the website for California's Department of Financial Protection and Innovation ("DFPI"), which shows the status of pending applications.

19.    The DCLA adopts the Rosenthal Fair Debt Collection Practices Act definition of the term "debt collection," which pertains explicitly to money or property

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

due or owing (or alleged to be due or owing) "by reason of a consumer credit transaction." As shown in the above paragraphs, Conservice qualifies as a debt collector under California law.

20. Conservice has obtained a license to collect debt in the following states, proving that Conservice is aware it requires such licensure: Arizona, Idaho, Maryland, New Mexico, North Dakota, Oregon and Rhode Island. But Conservice has not obtained a license to collect debts in California.

21. Pursuant to the DCLA, relief due to a violation may include refunds, restitution, disgorgement, and damages. Financial Code §100005(a)(2).

22. Defendant's failure to obtain a license to collect debts while collecting debts statewide constitutes an unfair and deceptive act and practice under Business and Professions Code § 17200, Civil Code § 1788.14(b), 1788.13(i), 15 USC §1692e(5). Plaintiffs were damaged due to Conservice's circumvention of the licensing requirements when they were assessed an illegal monthly service fee.

23. Conservice's acting as a debt collector in California when it was not licensed as a collection agency damaged Plaintiff and other Class Members. For example, Plaintiffs and other members of the Class were forced to pay "Service Fees," which were illegal per Civil Code §1788.14(b), as a direct and proximate result of Conservice's collection activity, even though that activity was against the law and no fees should have been assessed to Plaintiff and other Class members for Conservice's illegal business practices. (Below is a sample Conservice California bill screenshot from a prospective Class Member.)

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

| SERVICE TYPE | SERVICE PERIOD | CHARGES |
|---|---|---|
| Water Heating | 03/01/2023 - 03/31/2023 | $22.96 |
| Sewer | 03/01/2023 - 03/31/2023 | $58.38 |
| Trash | 03/01/2023 - 03/31/2023 | $47.09 |
| Water | 03/01/2023 - 03/31/2023 | $24.24 |
| Service Fee | Conservice is a service provider contracted to prepare monthly statements and provide conservation resources. | $5.50 |
| Current Charges due 05/01/2023 | | $158.17 |
| Total Current Charges | | $158.17 |

24.    The DCLA's prohibition against persons doing business as a collection agency without a license is designed to protect the interests of consumers like Plaintiff and the Class Members who are subjected to collection activity by debt collectors and to prohibit these agencies from using abusive and unfair debt collection practices against them. In its transactions with Plaintiffs and the Class Members, Conservice uniformly and systematically failed to comply with and violated the requirements of DCLA. Consequently, Defendant violated California law and caused damage to the Plaintiff and Class members via the collection of illegal fees.

## STATUTE OF LIMITATIONS – CONTINUING VIOLATION

25.    By its very nature (e.g., monthly billing), Conservice's collection of illegal pay-to-pay fees and ongoing debt collection without being licensed constitutes a continuing violation. As such, Conservice's entire course of conduct beyond the one-year statute of limitations imposed by the Rosenthal Act is at issue. Specifically, by collecting illegal pay-to-pay fees month after month, Defendant engaged in a continuing pattern and course of conduct as opposed to an unrelated, discrete act. In the scenario alleged herein, if the action is filed within one year of the most recent violation of the Class Representative Plaintiff, Defendant's entire course of conduct is at issue as to the class

26.    Defendant Conservice has engaged in a pattern of conduct that, by its very nature, involves repeated conduct rather than discrete acts. California has held that the continuing violation doctrine applies to Rosenthal Act claims. (*Komorova v. Nat'l Credit Inc.* (2009) 175 Cal.App.4th 324, 343-46 (2009).) Under this doctrine, when allegedly

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1  unlawful acts constitute a "continuing pattern and course of conduct," then a suit regarding

2  the entire course of conduct is timely if the complaint is filed within one year of the most

3  recent violation.

4      27.    In *DiFlauro v. Bank of America, N.A.* (C.D. Cal., Dec. 2, 2020, No. CV 20-

5  5692 DSF (SKX)) 2020 WL 10111966, the court found that the continuing violation

6  theory extended the statute of limitations for illegal pay-to-pay fees under a Rosenthal Act

7  claim. There, as here, Plaintiff alleged recurring, illegal pay-to-pay fees, but just one of

8  them was made within the one-year statute of limitations. Similarly, here, Class

9  Representative Louis alleges that Defendant Conservice assessed several convenience fees

10  within one year of filing the Complaint. As such, the statute of limitations on Plaintiffs'

11  Rosenthal Act claims should be extended to encompass the alleged violations against class

12  Plaintiffs.

13      28.    Finally, both the Ninth Circuit and California Supreme Court have held that

14  the 4-year statute of limitations of the UCL "admits of no exceptions" and controls even

15  if the "borrowed" law being sued upon provides a shorter period of limitations. (*See Cortez*

16  *v.Air   Prods. Co.* (2000) 23 Cal.4th 163, 178-172 (2000), *Denicolo v. Viking Servs.* 2021

17  U.S. Dist. LEXIS 134414 at p. 7.) As such, the four-year statute of limitations controls

18  here.

19              **CLASS ALLEGATIONS**

20      29.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3), individually

21  and for the benefit of all others similarly situated, or alternatively, as a common law class

22  action.

23      30.    Excluded from each Class are: (1) any Judge or Magistrate presiding over

24  this action and any members of their families; (2) Defendant, Defendant's subsidiaries,

25  successors, predecessors, and any entity in which Defendant or its parents have a

26  controlling interest and its current or former employees, officers, and directors; (3) persons

27  who properly execute and file a timely request for exclusion from the Class; ( 4) persons

28  whose claims in this matter have been finally adjudicated on the merits or otherwise

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

31.     Plaintiff proposes to represent the following class and subclasses, subject to modification after discovery and case development:

    a. **Business and Professions Code §17200 Class**: All citizens of the State of California with residential leases who, within the applicable statute of limitations, paid any service fee or late fee to Conserve arising from a residential lease and associated with a utility bill, during a period when Conserve was not licensed under Financial Code §100001 as required to lawfully engage in debt collection activity.

    b. **Rosenthal Class (Pay-to-Pay)**: All citizens of the State of California with residential leases who paid a service fee ("pay-to-pay" fee) or late fee to Conserve arising from a lease that did not authorize such fees and associated with a utility bill during the period when Conserve was unlicensed as a debt collector, and it was required to be licensed per Financial Code §100001, during the applicable statute of limitations through the date the class is certified.

    c. **Rosenthal Class (mini-Miranda)**: All citizens of the State of California with residential leases who, within the applicable statute of limitations, paid any service fee or late fee to Conserve arising from a residential lease and associated with a utility bill, during a period when Conserve was not licensed under Financial Code §100001 as required to engage in debt collection activity lawfully, and who did not receive a mini-Miranda notice in their initial outreach or subsequent letter per 15 USC §1692e(11).

    d. **Business and Professions Code § 17500**: All citizens of the State of California with residential leases who, within the applicable statute of limitations, paid any service fee or late fee to Conserve arising from a residential lease and associated with a utility bill, during a period when

2:24-cv-03253-HDV-BFM

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Conservice was not licensed under Financial Code §100001 as required to engage in debt collection activity lawfully.

32. **Ascertainability**: Membership in the Class can be determined based on Defendant's records. Individual members will be identifiable from Defendant's records, which include addresses and lease agreements.

33. **Numerosity**: The exact number of members of the Class is unknown and unavailable to Plaintiff at this time, but on information and belief it exceeds thousands and thus, individual joinder in this case is impracticable. California, the largest rental market in the US, with an estimated 14 million renters (see above footnote 2). The members can be identified through Defendant's databases and records.

34. **Predominant Common Questions**: The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

    a. Whether Conservice engaged in the conduct alleged herein;

    b. Whether Defendant assessed service fees and late fees on Class Members while unlicensed;

    c. Whether Defendant assessed pay-to-pay fees on Class Members whose leases did not permit service fees for utilities, such as Philips;

    d. Whether Defendant was a licensed debt collector;

    e. Whether Defendant made a false representation of the true nature of the business or services being rendered;

    f. Whether Defendant misrepresented its ability to take *any* action as a debt collector while unlicensed, such as the ability to collect any fees or any sums from consumers;

    g. Whether Defendant's conduct violated the UCL; and

    h. Whether the Class Members were damaged by Defendant's conduct.

35.    **Adequacy of Representation**: Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class Members, and proposed class members will be ably represented by counsel. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

36.    **Superiority of Class Action:** Proceeding as a class will confer substantial benefits such that it is superior to the alternatives. Because some individual, proposed class members may have paid little in fees, and therefore may not be able to justify the costs of individual litigation, class certification will allow those class members to litigate their claims efficiently and economically. Likewise, resolution of the same consumer protection claims in a single case is efficient for the judicial system and will avoid any potential for inconsistent outcomes arising from other cases simultaneously raising the same issue.

37.    Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## <u>FIRST CAUSE OF ACTION</u>
### Violations of the Rosenthal Act
### Cal. Civ. Code § 1788 et seq.
### (On Behalf of Plaintiffs and Class Members)

38.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

39.    The Rosenthal Act is a remedial statute that should be interpreted broadly in order to effectuate its purpose.

40.    Conservice's utility billing created an obligation to pay and constituted a "consumer debt" pursuant to Civil Code § 1788.2(f). This is because each monthly bill sent to Plaintiffs by Conservice was for past service (e.g., June bill was for electricity generated in May), thereby embodying a transaction in which services were acquired on

credit primarily for personal, family, or household purposes—i.e., a consumer credit transaction per Civil Code § 1788.2(e). Further, Plaintiffs Louis and Philips are natural persons and Conservice is a person per Civil Code § 1788.2(g) because it is a corporation.

41.    By collecting tenants' utility payments, Defendant is a debt collector per Civil Code § 1788.2(b) and (c). To wit, Conservice's website, app, and the ebills Conservice sends out to tenants constitute an act or practice in the collection of a consumer debt. Additionally, Conservice's ebills are media used or intended to be used for debt collection per Civil Code § 1788.2(c). Finally, Defendant, in the ordinary course of business, regularly, and on behalf of others, engages in debt collection. Defendant Conservice even boasts on its website that it will "Increase the accuracy, efficiency, and timeliness of the billing process with our customizable utility billing service." Further, Conservice states that it has sent out "36,972,789" resident **bills** year to date.

42.    Conservice's billing to Plaintiffs and the Class was intended to collect consumer debts and resulted in collection of alleged consumer debts from Plaintiffs and the Class - including utility charges allegedly due to their landlords and illegal pay-to-pay fees.

43.    The utility bills collected from Plaintiffs by Conservice and at issue here were all "due and owing" at the time of payment by Plaintiffs, per Civil Code § 1788.2(d). That is, Plaintiffs paid these bills after their due date.

44.    Defendant violated Cal. Civ. Code § 1788.13(i) and 15 USC §1692e(10)[3] because it made a false representation of the true nature of the business or services being rendered. Specifically, Conservice represented on its website, in its billing statements, and in introductory emails that it is "a utility management company." For instance, on Conservice's website, in the "About Us" section, it states: "We're Conservice, the Utility Experts®. (Yes, it's a thing. And yes, we copyrighted it.) *We're America's top utility nerds*…" In fact, Conservice was and is a debt collector.

---

[3] Per Civil Code §1788.17.

45.     Per 15 USC §1692e(11), a debt collector must disclose that it is attempting to collect a debt and that any information obtained may be used to collect the debt. In subsequent communications, the debt collector must disclose that the communication is from a debt collector. Conservice did none of this and, as such, evaded its legal obligations to consumers through its mischaracterization of the true nature of what it does. Consequently, the least sophisticated debtor would suffer a disadvantage in deciding a course of action in response to Conservice's collection effort.

46.     Defendant also violated 15 USC §1692e(2)(B) and (5), via Cal. Civ. Code §1788.17, because it was not licensed to take *any* action as a collection agency. Hence, on its online FAQ page presented to tenants, when asserting that monthly service fees may *not* be avoided by signing up for ebills, Conservice was both making a false representation about the compensation it may lawfully receive as a debt collector and threatening action it could not take. This is because (1) it was not licensed to collect *any* monies (including late or convenience fees) per Financial Code §100001(a), and (2) such fees are prohibited by California law (e.g., Cal. Civ. Code § 1788.14(b).) The same applies to its statement on the FAQ page about late payments wherein Conservice states: "Please be aware that you may be charged *late fees* if the full balance isn't paid by the due date." Conservice could not legally collect late fees because it was not licensed.

Q: Can the monthly service fee be removed by signing up for ebills?

A: No. The service fee covers costs related to calculating and compiling charges and making your statements available to you (either a paper copy through the mail, or an electronic copy through email).

Q: I'm unable to pay my bill in full. Can I setup a payment plan or payment arrangement?

A: Conservice does not offer payment plans or payment arrangements. However, we will accept any payment you are able to make at any time. If you make payments directly to your leasing office, you will need to check with them on their payment policy. Please be aware that you may be charged late fees if the full balance isn't paid by the due date, regardless of whether payments are made to Conservice or your leasing office.

47.     With respect to its pay-to-pay fees, when Plaintiff Philips made a utility payment to Conservice, Defendant engaged in at least three prohibited practices under the Rosenthal Act:

   a. Making a "false representation that the consumer debt may be increased by . . . service fees . . . or other charges if, in fact, such fees or charges may not

legally be added to the existing obligation," (e.g., that the utility payment could be increased by the fee amount) *see* Civil Code § 1788.13(e) (Philips only);

    b.  "Charg[ing] for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt," where such charge is not "permitted by law" in violation of Civil Code, § 1788.14(b) and 1692f (Philips only); and

    c.  Violating Civil Code, § 1788.17, which incorporates the Fair Debt Collection Practices Act ("FDCPA") by reference, by (1) charging "any amount (including any interest, fee, charge, or expense incidental to the principal obligation)" that is not expressly authorized by the agreement creating the debt or expressly permitted by law in violation of 15 U.S.C. § 1692f(1) (Philips only), and (2) making false, deceptive, or misleading representations in connection with the collection of any debt, including the character or amount of the debt in violation of 15 U.S.C. § 1692e(10).

48.    With respect to paragraph 42(c) above, Defendant Conserve is a debt collector as defined by the FDCPA because it uses an instrumentality of interstate commerce (e.g., the internet) in a business that regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

49.    The FDCPA is a strict liability statute. As such, a consumer need not show intentional conduct by the debt collector to be entitled to damages. Thus, by violating Cal. Civ. Code §§ 1788.13(e) and 1788.17, in legal effect, a federal liability standard of strict liability is embedded in state law. (*Young v. Midland Funding LLC* (2023) 91 Cal.App.5th 63, 89-90.)

50.    The fees charged by Conserve are far in excess of the actual costs incurred by it in connection with the payment transactions. On information and belief, Conserve's costs for processing payments online are less than $0.50 per transaction. (Association for Financial Professionals, *Payments Cost Benchmarking Survey*, at 8 (2015).)

51.     As a proximate result of Defendant's violations of the Rosenthal Act as enumerated above, including Plaintiffs' payment of illegal "service" fees for collection activity that itself was illegal because Defendant lacked a license to collect debt, Plaintiff Philips has been damaged in an amount subject to proof. As such, Plaintiff and Class Members are entitled to actual and statutory damages pursuant to Civil Code § 1788.30(a); statutory damages for knowing or willful violations pursuant to Civil Code § 1788.30(b), 1788.17, and 1788.32, to the full extent provided by law; remedies set forth at 15 U.S.C. §1692k; and reasonable attorneys' fees and costs under Civil Code § 1788.30(c), in an amount to be determined at trial by a jury.

## SECOND CAUSE OF ACTION
### Violation of The California Unfair Practices Act § 17200 et seq. ("UCL")
### (On Behalf of Plaintiff and Class Members)

52.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

53.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice. (Cal. Bus. & Prof. Code § 17200.) Conservice has engaged in the following non-exhaustive list of conduct proscribed by California Business and Professions Code § 17200 et seq.:

    a.  Engaging in the business of debt collection in California without first obtaining a license pursuant to Financial Code § 100001;

    b.  Collecting a service fees in contravention of § 1788.14(b), which expressly forbids debt collectors from "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt";

    c.  Falsely representing of the true nature of the business or services being rendered in violation of Civil Code § 1788.13(i). Specifically, making it appear as if Conservice is something other than a debt collector;

17

d.  Making a "false representation that the consumer debt may be increased by . . . service fees . . . or other charges if, in fact, such fees or charges may not legally be added to the existing obligation" in violation of Civil Code § 1788.13(e); and

e.  Violating Civil Code, § 1788.17, which incorporates the Fair Debt Collection Practices Act ("FDCPA") by reference, so that a violation of the FDCPA is a *per se* violation of the Rosenthal Act via (1) making false, deceptive, or misleading representations in connection with the collection of any debt, including the character or amount of the debt in violation of 15 U.S.C. § 1692e(2)(A).

54.  Plaintiffs suffered economic injury when they were forced to pay illegal service fees to Conservice. Plaintiffs and other members of the Class were assessed and paid charges that they did not legally owe, including the service fees assessed and paid to compensate Conservice for its illegal activity, which damaged Plaintiffs and Class Members.

55.  As a result of the conduct described above, Defendant has been unlawfully enriched at the expense of Plaintiff and members of the Class by obtaining revenues and profits that it would not have otherwise obtained absent its unlawful conduct. Plaintiff seeks restitution, including restitutionary profits, pursuant to California Business and Professions Code § 17535 to restore to Plaintiff and Class Members all monies Conservice acquired as a result of its unlawful and deceptive conduct.

56.  Plaintiffs and Class Members have suffered injury in fact and have lost money or property as a direct and proximate result of Conservice's unlawful and deceptive conduct, and will continue to suffer such injury unless Conservice's conduct is enjoined and restrained by the Court. Plaintiffs therefore seek an injunction pursuant to California Business and Professions Code § 17535 prohibiting Conservice from engaging in the unlawful and deceptive conduct described above. Otherwise, Plaintiffs and members of

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

the California Class may be irreparably harmed and/or denied an effective and complete remedy.

### THIRD CAUSE OF ACTION
**Violation of The California Business and Professions Code § 17500 et seq.**
**(On Behalf of Plaintiff and the Class)**

57.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

58.    Defendant has engaged in the following non-exhaustive list of conduct proscribed by California Business and Professions Code § 17500 *et seq*.: making and causing to be made false and deceptive statements to Plaintiff and the public regarding its status as a legitimate debt collector, even while knowing it was unlicensed to collect debt in California. Such statements included that Conservice could charge late fees, that Conservice could collect pay-to-pay fees, and failing to disclose that Conservice was a debt collector (as shown below), thereby depriving tenants of rights they would have under California law as debtors. These statements were made in the FAQ/Help section of the tenant portal website for Conservice, in writing. On information and belief, Conservice made these statements. Plaintiffs are uncertain how long the statements have been on Conservice's website.



59.    Members of the public were likely to be deceived by these representations by Conservice. Conservice had a duty to disclose material information to Plaintiff and the public about its status as a debt collector and the fees it could legally collect from consumers. Instead, Conservice knowingly and actively concealed information from the public.

2:24-cv-03253-HDV-BFM

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

60.     Plaintiffs have suffered injury in fact and have lost money or property as a direct and proximate result of Conservice's unlawful and deceptive conduct in the form of the illegal service fees collected by it and the fact that Plaintiff relied on Conservice's false representations in paying her utilities and the attendant service fees. Plaintiff and Class Members will continue to suffer such injury unless Conservice's conduct is enjoined and restrained by the Court. Plaintiff therefore seeks an injunction pursuant to California Business and Professions Code § 17535 prohibiting Conservice from engaging in the unlawful and deceptive conduct described above.

61.     Moreover, Conservice was unjustly enriched as a direct and proximate result of its unlawful and deceptive conduct. Plaintiff and Class Members therefore seek restitution, including restitutionary profits, pursuant to California Business and Professions Code § 17535 to restore all monies Conservice acquired as a result of its unlawful and deceptive conduct.

## For Declaratory Relief (28 U.S.C. § 2201)
## (On Behalf of Plaintiff and the Class)

62.     Plaintiffs incorporates by reference the foregoing allegations as if fully set forth herein.

63.     Plaintiffs contend that Defendant's service and late fees assessed when Class Members pay their utilities through Conservice are illegal under the Fin. C § 100001, Cal. Civ. Code §§ 1788.14(b), 1788.17, 1788.13(e), and Business and Professions Code §§ 17200 et seq. There are no laws that permit these fees, and no enforceable and legal provision allowing for them in the applicable lease agreements.

64.     Plaintiffs are informed and believe and based thereon alleges that Defendant denies the assertions in the foregoing paragraphs of this Complaint.

65.     This presents an actual, judicable controversy between the parties relating to the actions by Conservice in their dealings with Plaintiff and members of the Classes, relating to the legitimacy of charges assessed as a result of those actions. In particular,

2:24-cv-03253-HDV-BFM

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Conservice has acted as a debt collector with respect to Class Members without a license to collect debts. Conservice's actions as a debt collector include collecting payments for utility fees and associated charges from Plaintiff and Conservice Class Members, as well as service fees, when Conservice was not entitled to collect those fees.

66.    Plaintiff therefore seeks a judicial determination that Defendant's pay-to-pay fees and late fees are illegal pursuant to the Rosenthal Act, the Financial Code, and California Business & Professions Code § 17200, et. Seq. Additionally, Plaintiff seeks a determination of whether Defendant has engaged in "unlawful, unfair or fraudulent business acts or practices" or "unfair deceptive and untrue or misleading advertising," related to its service and late fees in violation of California Business & Professions Code §§ 17200 and 17500, *et. seq*.

67.    A judicial determination is necessary and appropriate at this time under these circumstances.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the proposed Class respectfully request that the Court enter an order:

A.    Certifying this case as a class action on behalf of the classes defined above;

B.    Award damages, including compensatory and exemplary damages, to Plaintiff and the Classes in an amount to be determined at trial;

C.    Award statutory damages and/or penalties to Plaintiff and the Classes;

D.    Permanently enjoin Defendant from the wrongful and unlawful conduct alleged herein, including making false and misleading statements regarding status as a debt collector and the legitimacy of its collection fees;

E.    Award Plaintiff and the Class their expenses and costs of suit, including attorney's fees, litigation expenses, and costs of suits;

F.    Compensatory, nominal, and punitive damages;

G.    A declaration that Defendant Conservice may not assess service or late fees against Class members in any amount while unlicensed, and

H.    Award such further relief as the Court deems appropriate.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a jury on all issues so triable.


Dated: July 21, 2025                    **THE LAW OFFICES OF KENNETH TOWNSEND**


                                        By: *<u>/s/ Kenneth Townsend</u>*
                                            Kenneth Townsend
                                        Attorney for Plaintiff AMANDA JOLICOEUR-LOUIS

2:24-cv-03253-HDV-BFM

SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL